### KENNEDY *v.* MEARA *et al.*

1. Even if the act of 1894 (Acts 1894, p. 80), now contained in the Civil Code, § 2372 et seq., is subject to the objection that the body of the act contains matter different from what is expressed in the title, or that it refers to two subject-matters, such act, having been incorporated in the Code of 1895, became, by the adoption of that code, a valid law of this State, without reference to any defects of the character above referred to that might have existed in the original act.

2. The act above referred to is not subject to the objection that it is a special law enacted in a case for which provision has been made by an existing general law.

3. The special courts created by the act in question are all of the same grade and class, the presiding officer in each being the judge of a given municipal court in the particular municipality, and the act is not subject to the objection that it is violative of that provision of the constitution contained in the Civil Code, § 5859.

4. When the State as parens patriæ in a proper case, through its constituted officers or agencies, takes under its control an infant, the law authorizing such child to be bound to service under proper restrictions is not a violation of those provisions of the constitution of this State and of the United States which prohibit slavery and involuntary servitude except as a punishment for crime after conviction thereof.

5. The act in question provides for a hearing before the child is finally taken from the custody of the parent and a reasonable notice before such hearing; and when the terms of the act in reference to the hearing are construed in the light of the constitution and general laws of this State regulating the procedure of inferior judicatories, there is nothing in the act which deprives the parent of any right without due process of law.

6. The General Assembly has authority to authorize benevolent institutions of the character indicated in the act under consideration to bind out to service a child committed to its care, such institution reserving the right of supervision to see that the child is properly cared for.

7. The judgment of commitment to the benevolent institution under the act in question is a judgment made by a court of competent jurisdiction; and so long as it stands unreversed it is binding upon the parties. It was therefore not erroneous to reject evidence tending to impeach the validity of this judgment.

8. When a child has been committed to a benevolent institution under the provisions of the act under consideration, the parent may apply to any judge having the authority to issue a writ of habeas corpus, alleging that the conditions have changed since the commitment was made, and that the parent is now a fit person to have the custody of the child, and is willing and able to maintain and educate it; and if the judge is satisfied that such is the truth, he is authorized to restore the child to the custody of the parent. The remedy given in the act to the parent applying for the return of the child by application to the authorities of the institution is merely cumulative, and does not oust the jurisdiction of the court. The court erred in not admitting evidence tending to show that the conditions had so changed since the judgment of commitment that the parent was entitled to the custody of the child.

Argued June 4, — Decided December 12, 1906.

Habeas corpus. Before Judge Reid. City court of Atlanta. March 8, 1906.

The plaintiff sued out a writ of habeas corpus for the recovery of her child from the possession of the defendants. The defendants contended that they had received the child from the "Home for the Friendless," to which it had been properly committed from the recorder's court of the City of Atlanta, and at the hearing of the writ introduced in evidence a paper showing the proceedings before the recorder respecting the commitment of the child. The plaintiff objected to the evidence, upon the ground that it did not show sufficient authority for the retention of the child, because the recorder in committing the child relied on the authority of the act of the legislature, approved December 18, 1894 (Code §§ 2372-2387), and this act was unconstitutional. The caption of the act was as follows: "An act to regulate benevolent institutions in this State, to define the powers of those now or hereafter incorporated, and to provide for the incorporation of the same." The body of the act was as follows: "Sec. I. Be it enacted by the General Assembly of the State of Georgia, that from and after the passage of this act, any three or more persons desiring a charter for any benevolent institution shall file, in the office of the clerk of the superior court of the county in which they desire to transact business, a petition or declaration specifying the objects of their association, together with their corporate name, and the time (not exceeding fifty years) for which they desire to be incorporated; which petition shall be recorded by said clerk, and shall also be published once a week for four weeks in the nearest public gazette to the point where

such institution is to be located, before said court shall pass an order declaring said application to be granted. Sec. II. Be it further enacted, that said corporation shall have power to purchase and hold real estate sufficient for the actual occupation and necessary uses of the society or institution, and may receive, by gift or devise, property of any kind, on the terms contained in the gift or devise. Sec. III. Be it further enacted, that the directors or board of managers of such institution shall have power to make by-laws and regulations for the government of the institution, and may control the children under their care, and prescribe their course of instruction and management to the same extent and with the same rights as in the case of natural guardians. Sec. IV. Be it further enacted, that in all cases where a child shall have been surrendered by its natural guardian or custodian to the care and management of any such institution, by any instrument or declaration in writing, or committed to its custody according to law, it shall be lawful for the directors or board of managers, at their discretion, to place such child, by adoption or at service, in some suitable employment, and with some proper person or persons; provided, that in all such cases the terms of the indenture shall be first approved by the ordinary of the county, which approval shall be signified on such indenture by the signature of said ordinary; but in every such case the requisite provisions shall be inserted in the indenture or contract of binding to secure the child so bound such treatment, education, or instruction as shall be suitable and useful to its situation and circumstances in life; and in all such cases where a child shall have been surrendered by its natural guardian or other legal custodian to the care and management of such institution without any instrument or declaration in writing, but because of poverty or other liability to care for such child, it shall be lawful for the board of managers to place such child, for adoption or at service, in the manner hereinbefore provided, after having kept such child at least one year, and there being no reasonable probability of such parent or custodian being able to resume the care of such child. Sec. V. Be it further enacted, that in case of the death or legal incapacity of a father, or of his imprisonment for crime, or of his abandoning and neglecting to provide for his family, the mother shall be deemed the guardian of her children for the purpose of ·making such surrender as aforesaid; and if in any such case the

mother be either dead or legally incapable of acting, or imprisoned for crime, or an inmate of a house of ill fame, or shall have abandoned or neglected to provide for her child or children, the ordinary of the county in which such institution is established shall be, by virtue of his office, the legal guardian for the like purpose; and in all cases where said child has been abandoned by the person legally entitled to its custody, the said ordinary shall be ex officio such guardian for the same purpose, and in either case, whether such surrender be made by the mother or by the ordinary, and whether before or after admission into said institution, it shall be deemed a legal surrender for the purposes and within the true intent and meaning of this act.　　Sec. VI. Whenever any girl under the age of 14 or any boy under the age of 10 years shall be found by any policeman or other officer of the county in which any such institution devoted to the relief or care of children is located, in any street, highway, or public place in said county, or any city therein, in circumstances of destitution and suffering or abandonment, exposure or neglect, or of beggary, or in any house of ill fame, it shall be the duty of any such policeman or other officer to bring such child before the mayor, recorder, or other judicial officer in said county, or any city therein, for examination as to the cause of such suffering, exposure, or neglect; whenever any such child is so brought before the mayor, recorder, or other magistrate, etc., and it shall be proved to the satisfaction of such mayor or other judicial officer, by competent testimony, that by reason of the neglect, habitual drunkenness, or other vicious habits of the parents or lawful guardians, or the person having the custody of such child, that it is a proper object for the care and instruction of such institution located in such county, such mayor, recorder, or other magistrate, instead of committing such child to the almshouse, or such other place, if any, as may have been provided by the city or county authorities of such county, may, in his discretion, by warrant in writing under his hand, commit such child to such institution, to be and remain under the guardianship of its managers until therefrom discharged in the manner prescribed by law.　　Sec. VII. Be it further enacted, that any order so made by any such mayor, recorder, or magistrate may be executed by any policeman or constable to whom it shall be delivered by the official issuing it, by conveying the child therein named to such institution, and such

child shall be detained in said institution until discharged or removed therefrom in the manner hereinafter provided. Sec. VIII. Be it further enacted, that immediately upon the making of any such order, the officer making the same shall deliver to the policeman or constable a notice in writing addressed to the father of such child, if its father be living and resident within the county, and if not, then to its mother, if she be living and so resident, and if there be no father or mother of such child, then addressed to the lawful guardian of such child, if any, or to the person with whom, according to the examination of the child and the testimony, if any, received by the mayor, recorder or magistrate, such child may reside; in which notice the party to whom the same is addressed shall be informed of the commitment of such child to said institution, and shall be notified that unless taken therefrom in the manner prescribed by law within ten days after the service of such notice, the child therein named shall be deemed legally surrendered to the institution for the purposes and within the true intent and meaning of this act. Sec. IX. Be it further enacted, that such notice shall be served by the officer to whom it shall be delivered by delivering the same to the party to whom it shall have been addressed personally, or by leaving it with some person of sufficient age, at the place of residence or business of such party; and it shall be the duty of such officer immediately to report the fact and the time and the manner of such service to the officer issuing the notice. Sec. X. Be it further enacted, that if the party to whom such notice shall have been addressed or any other person shall, within the time specified therein, prove to the satisfaction of the officer issuing the same that the circumstances of want and suffering, or other circumstances under which child shall have been found, have not been occasioned by the habitual neglect or misconduct of the parents or legal guardian of such child, then it shall be the duty of such magistrate, by order in writing addressed to the directors or managers of said institution, to direct such managers to deliver such child to the custody of the party named in such order, who shall thereupon be entitled to take such child away from said institution. Sec. XI. Be it further enacted, that if such proof shall not be produced within the time above prescribed, it shall be the duty of the officer, by whom such child shall have been committed to said institution, to make and transmit to the directors or managers thereof a notice

in writing to that effect. Sec. XII. Be it further enacted, that if any child who has been previously arrested and delivered to the parent or guardian, as hereinbefore provided, shall again be found in either of the conditions hereinbefore described, the officer before whom such child is brought, upon proof thereof, may afterward make a final order committing such child to the care and instruction of the institution, without giving the notice hereinbefore provided for. Sec. XIII. Be it further enacted, that if at any time after the child shall have been committed to said institution, as above provided for in this act, it shall be made to appear to the satisfaction of the directors or board of managers of said institution that such child was, on insufficient cause, false or deficient testimony, or otherwise wrongfully or improvidently so committed, the said directors or board of managers shall, on the application of the parents, guardian, or protector; and also, if, after a child shall have been properly committed to said institution by virtue and in pursuance of the provisions of this act, any circumstances should occur, which, in the judgment of the directors or board of managers of said institution, would render expedient and proper the discharge of such child from the guardianship of said board, having a due regard for the welfare of such child and the purposes of the institution, the said directors or board of managers, on the application of the parents, guardian, or protector of such child, may, in their discretion, deliver up the child to its parents, guardian, or protector, on such reasonable condition as the said directors or board of managers may deem right and proper; provided, the consent of the ordinary shall be first obtained. Sec. XIV. Be it further enacted, that the said directors or board of managers shall have power, and it shall be their duty, whenever any child intrusted or committed to their charge shall, by the commission of any infamous crime, or by confirmed habits of vagrancy, have become so degraded and debased as to be an improper subject for their care and management, to return such child to the committing officer or other proper authority, to be disposed of in due course of law. Sec. XV. Be it further enacted, that if any party to whom the directors or board of managers of said institution shall have intrusted a child shall be guilty of any cruelty, misuse, and refusal or neglect to furnish the necessary provisions or clothing, or of any other violation of the terms of indenture or contract, to any such child so indentured,

such child, or any reliable person, may make complaint thereof to any justice of the peace of the county in which such child is so indentured, or to the mayor, recorder, or other judicial officer of any city in the county in which such child is bound to service; and it shall be the duty of such officer to summon the parties before him and examine into, hear, and determine the said complaint; and if, upon such examination, the said complaint shall appear well founded, such officer shall, by certificate under his hand, discharge such child from his obligation of service and restore him or her to the charge and management of such institution in the same manner and with like powers as before the indenture of such child. Sec. XVI. Be it further enacted, that the directors or board of mana gers of such institution shall be the guardian of every child indentured by virtue and in pursuance of the provisions of this act, to the extent that they shall take care that the terms in the contract be faithfully fulfilled, and that such ward be properly treated; and it is hereby made their special duty to inquire into the treatment of every such child and redress any grievance in the manner prescribed by law; and it shall be the duty of the person to whom any such child shall be indentured, and he shall by the terms of the indenture be required, as often as once in six months to report to said directors or board of managers the conduct and behavior of said apprentice and anything of special interest pertaining to his welfare. Sec. XVII. Be it further enacted, that all laws in conflict with this act be, and the same are, hereby repealed." Acts 1894, p. 80.

After the passage of the act, it was embodied in the Civil Code of 1895, and the Civil Code, by act of the General Assembly was adopted as a code of laws. See Acts 1895, p. 98. Upon the trial of the case before the habeas-corpus court, it was insisted by the plaintiff in error that the act was unconstitutional, for the following reasons: (1) That it referred to more than one subject-matter, and contained matter different from what was expressed in the title. (2) That it was special legislation. (3) That it was contrary to the provision requiring that the jurisdiction, powers, etc., of courts of the same grade should be uniform. (4) That it was contrary to the provision prohibiting slavery. (5) That it authorized the deprivation of one's liberty without due process of law. The court was of the opinion that the act was not unconstitutional for the reasons assigned, and admitted in evidence the authenti-

cated proceedings from the court committing the child into the custody of the Home for the Friendless, which were under authority of and in pursuance of the act. The plaintiff excepted and assigned error. In addition to these assignments of error, several others were made, only two of which need be noted: (1) That the court refused to allow the plaintiff to prove "that the facts stated in the commitment as aforesaid do not now exist, and that the plaintiff is now able and willing to provide for her child a good home, good clothing, plenty of good food, and proper care, and that she is not now a woman of vicious habits and guilty of habitual drunkenness." (2) That the court refused to allow plaintiff to prove that the child's grandmother was a woman of good moral character and was willing and able to take care of the child. After hearing all of the plaintiff's contentions, the court passed an order denying the writ and remanding the child to the custody of the Home of the Friendless. The plaintiff excepted and assigned error upon that ruling.

Lavender R. Ray, for plaintiff.

James L. Mayson and William P. Hill, for defendants.

ATKINSON, J. 1. The first objection raised to the act in question is: Is it in violation of that provision of the constitution which declares that no law shall pass which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof? Civil Code, § 5771. The act has been embodied in the Code of 1895 and became a part of the law of this State upon the adoption of that code, and the contents of the title of the original act are now immaterial. Central Railway Company v. State, 104 Ga. 832 (5).

2. The act in question is not subject to the objection that it is a special law enacted in a case for which provision has been made by an existing general law. In Mathis v. Jones, 84 Ga. 804, it was held that the generality spoken of in this clause of the constitution was territorial generality, and that there was no way to convert a statute territorially general into one territorially special; that the statute must live all over the State with equal vigor, and can be excluded from no nook or corner in which there is subject-matter for its operation. In Union Savings Bank v. Dottenheim, 107 Ga. 606, it was stated that a law is a general law within the meaning of the constitution when it operates in every part of the

State and upon every person or transaction embraced within its terms. . The right of the General Assembly to classify subjects for legislation was recognized in that decision, and a classification by the General Assembly will be upheld, unless it is manifest that it is purely arbitrary and founded upon no just reason. When these principles are applied to the act in question, it is not subject to the objection urged against it. It is true that the act applies to chartered benevolent institutions only, but it applies to all chartered benevolent institutions within the State of the character referred to in the act. The main purpose of the act is to provide for the welfare of children of certain ages who for sufficient reasons should not be left at large or in the custody of their parents and others ordinarily entitled to their control and management. A law regulating all institutions of this character wherever existing within the limits of the State is general in its nature so far as territorial generality is concerned, it being operative upon every person within the class made by the General Assembly and the classification not being purely arbitrary. See, in this connection, *Glover* v. *State,* 126 *Ga.* 594.

3. It is contended that the act in question is a violation of that provision of the constitution which declares that "the jurisdiction, powers, proceedings, and practice of all courts or officers invested with judicial powers (except city courts), of the same grade or class, so far as regulated by law, and the force and effect of the process, judgment and decree by such courts, severally, shall be uniform." Civil Code, § 5859. Whenever the General Assembly undertakes to establish courts of the same grade or class, there must be uniformity in such courts; but where a new and independent single court, adapted to the needs of a particular locality, is created, it is not necessary that the jurisdiction, etc., of this court shall be uniform with those of existing courts of a different class. *Daughtry* v. *State,* 115 *Ga.* 115, and cases cited. If the act could be in any event construed as local or special in its nature, establishing local courts for particular localities, it would not be unconstitutional for the reason assigned under the decision above referred to. But the act is general; and while it does not create new officers, it does invest existing officers of a certain grade and class with given judicial powers peculiar to this act. Wherever there is a benevolent institution within the limits of a municipal cor-

poration of the character indicated in the act, then the court to pass on the judicial questions authorized to be raised is the police court or court corresponding to that class of municipal courts; that is to say, the judge of the police court becomes the judge of a special court for determining the issues which this act authorizes to be raised for judicial determination, just as every ordinary is authorized to pass upon a habeas-corpus case, but he passes upon it, not as the judge of the court of ordinary, but as the judge of the special statutory court of which he is the presiding officer for the purpose of hearing cases of this character. When the act is so construed, it is manifest that a grade and class of courts is created, and the grade and class created, so far as relates to its jurisdiction, etc., is uniform throughout the State.

4. A further contention is that the act violates the provisions of the 13th amendment of the constitution of the United States and that provision in the constitution of the State of Georgia which prohibits slavery and involuntary servitude save as a punishment for crime after legal conviction thereof. When the State as parens patriæ, through its properly constituted tribunals, takes under its custody and control those unfortunates who are unable to take care of themselves on account of physical or mental infirmity, or on account of the fact that those charged with the duty of caring and providing for such persons fail to discharge this duty or are not of such character as that it is best for such persons to be under their custody or control, it can not be said that, because incidentally to this control such persons may be required to perform such labor as is proper to be required of them according to their age and condition, such persons are placed within slavery within the meaning of the constitutional provisions denying the power of the State to establish that condition of servitude. When the State takes into its custody, under the power above referred to, a child under the age of 21 years, the State occupies, so far as the care and custody and duty owed to the child is concerned, the same position that the parent occupies, and the parent is authorized to restrain the liberty of the child, and it is the duty of the parent to require of the child such service and labor as its age and capacity would admit of and as may be for the best interest of the child itself. Therefore it necessarily follows that when the State has to assume the control and custody of the child, its conduct towards

it would be the same that a dutiful parent would exercise, keeping in view the welfare of the child; and the action of the State in such cases would neither amount to a placing of the child in slavery, nor depriving it of its liberty in an unlawful way. See, in this connection, McGehee on Due Process of Law, p. 344; School *v.* Supervisors, 40 Wis. 328.

5. It is said that a parent has a property right in the labor and services of his minor child, and this is true. See *Frazier* v. *Georgia Railroad Co.,* 101 *Ga.* 70 (3). Such being the case, the parent can not be deprived of his property right in the labor and services of the minor child, except by due process of law. The parent may by his conduct forfeit his right to the custody of his minor child, but this forfeiture can not become effective until the parent has been accorded a right to be heard on the question as to whether a forfeiture has taken place. Hence in any provision made by the law for the taking out of the custody of the parent a minor child, unless the parent is given a reasonable opportunity to be heard on the question as to whether the conditions are such that the State should deprive him, either temporarily or until the child becomes of full age, of his custody and services and labor, the parent would be under the operation of such proceeding deprived of his property without due process of law. The act in question provides for a written notice addressed to the parent having the legal right to the custody of the child, and gives the parent the right to be heard before the recorder or judge of the police court after service of such notice ten days before the time fixed for a hearing. Under the act, the parent is given ten days to prepare his case, and is accorded a hearing before the police judge. An opportunity for full hearing is provided for, and the time for the service of the notice before the date of the hearing, while short, can not be said to be unreasonable. While the act does not in terms provide for a postponement of the case from time to time if the parent is not prepared for the hearing, the judge would have this power, and it is to be presumed that it would be exercised, until the contrary appears. While the act does not provide for an appeal from the decision of the judge, still, as in such case the recorder or police judge is exercising judicial powers, his decision is, under the constitution, subject to review by certiorari. When the right of a State to take the child into its custody is conceded, it is apparent

from the terms of the act, taken in the light of the constitution and the laws of this State, that the rights of the parent are sufficiently guarded against an arbitrary exercise of the power conferred upon the judicial officer authorized to deal with the matter.

6. Under the scheme of this act the benevolent institution becomes an agency of the State to discharge the duty which the State owes to the class of children dealt with in the act, and during the time that the State is discharging its duty it has, through its agency, exclusive control of the child. The benevolent institution is responsible for the child, but the act authorizes such institution to apprentice or bind the child to service in its discretion. When this is done the responsibility of the benevolent institution does not cease. It is the duty of the institution to see that the person to whom the child is bound or apprenticed performs all of the duties which the institution itself would be required to perform if the child remained in its custody. The General Assembly would have the power to provide that the child in the first instance might be bound to service or labor to an individual, and there is a law in this State authorizing such a course in given cases. Civil Code, §§ 4232, par. 12, 2505, 2605. In this act the General Assembly in its discretion has seen proper to vest the benevolent institution with the discretion either to keep the child in its own custody, or to bind it or apprentice it to a proper person. There is no reason why the General Assembly could not exercise this power so long as under the terms of the act the welfare of the child is guarded and the right of supervision by the institution is required, and the State exercises its power of supervision over the institution itself. It is true that the act uses the word "adoption" in referring to the placing of the child at service, but this word is not to be construed in the sense in which it is used in those provisions of the law where one person adopts the child of another. In such cases there is a complete surrender for all time of the parental control to the person whom the parent consents shall become the adopted parent. The word "adoption" in this act is to be so construed as to confer upon the person receiving the child no greater power over the child than the benevolent institution itself had in the first instance, and that is, to retain the custody of the child until the time arrives when the child can be properly returned to its parent or returned under certain circumstances to the court from which it

was received. Although the institution may in form provide for the adoption of the child by the person to whom it is committed, such adoption would amount only to a binding to service to such persons for and during the period of time that the institution itself would have the right to retain the custody of the child.

7. Complaint is made that the court erred in rejecting evidence going to show that the facts stated in the judgment of commitment were not true. There was no error in this ruling. We have reached the conclusion that the act provided for due process of law, and the record of the recorder's court, which appears in the transcript, shows that the proceedings were in substantial accord with the act.

8. The applicant offered to prove that the grounds upon which the judgment of commitment was founded did not then exist so far as the conduct of the applicant was concerned, and that she was then able and willing to take care of the child. The court rejected this evidence, and this is assigned as error. We think this evidence should have been admitted. While the conduct of the parent which authorizes the commitment of the child to the benevolent institution forfeits the right of the parent to the custody of the child, this forfeiture is not absolute. It is only for the time being, that is, so long as the conditions are such that the parent is not a fit person to have the custody and control of the child. The act provides that the parent may make an application to the authorities of the institution for the return of the child; and if such authorities are satisfied that it would be for the best interest of the child that it should be returned to the custody of the parent, such authorities may, with the consent of the ordinary, discharge the child from its custody and deliver it to the parent. Civil Code, § 2384. It seems under the act that the authorities of the institution are given a discretion in regard to this matter, and no provision is made in the act for reviewing the decision of the authorities on this question. Hence, if a parent should make an application to the authorities of the institution under the terms of the act, and the authorities should refuse the application for return of the child, it may be that the parent would be bound by the decision of the authorities on the condition of affairs that existed at the time that the application was made. But be this as it may, we are clear that any judge sitting in a habeas-corpus court

has a right, on the application of a parent, to inquire into the propriety of the benevolent institution being required to return the child to the parent on the ground that the conditions have changed since the judgment of commitment was made. The benevolent institution is a corporation of the State. The State has a right of visitation over every eleemosynary corporation. This right of visitation is exercised through the instrumentality of the courts. Where the custody of a child is the matter in controversy, any judge having jurisdiction of the issue of the writ of habeas corpus can, by means of this remedy, in behalf of the State exercise this power of visitation to see whether the corporation is discharging its duty under the law. If the conditions have so radically changed since the judgment of commitment that the parent should no longer be deprived of the custody and services of his child, then the retention in custody of such child by the benevolent institution is wrongful, and the courts would restore the custody to the parent. These are matters addressed to the sound judgment and discretion of the judge of the habeas-corpus court; the evidence of which should have been admitted and the judge have determined whether this evidence was true. The evidence in regard to the character of the grandmother and her ability to support and maintain the child was irrelevant, and it was proper to exclude it. If the judge reaches the conclusion that the parent is not entitled to the custody or control of the child, and that the benevolent institution is discharging its duty under the law, the child should be allowed to remain in its custody or in the custody of the person to whom it is bound. The remedy given the parent in the act by application to the authorities of the institution is not exclusive, and does not oust the jurisdiction of the court. Farnham *v.* Pierce, 141 Mass. 203-6.

Complaint is made that the court refused to render a judgment directing the Home for the Friendless to permit the mother to visit her child once a week. There was no error in this ruling. This is a matter that must be left to the discretion of the authorities of the institution. So long as the commitment stands, the child is in the exclusive custody of the institution, and whether the parents should be allowed to visit the child must necessarily be left to the sound discretion of the governing authorities of the institution. It is not to be presumed that the authorities would

arbitrarily refuse a parent the privilege of seeing her child, if the parent made application for a visit to the child at a reasonable time and her character and conduct were such that such a visit would not be prejudicial to the child or the institution. The judgment is reversed solely upon the ground above referred to, and upon another hearing the judge will inquire solely into the matter as to whether the conditions are such now that the parent is entitled to have the child returned to her.

*Judgment reversed. All the Justices concur.*