## Ex Parte A. M. Ferguson.

No. 12291.   Delivered February 20, 1929.
Rehearing denied April 3, 1929.

The opinion states the case.

*Davidson & Yeager* of Dallas, for appellant,

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Seeking freedom from restraint following commitment after conviction in the county court of Grayson county for operating a gin without license, appellant obtained a hearing upon a habeas corpus issued by the district court, prayed for on the ground that the law under which he was convicted was unconstitutional. He was remanded, and appeals.

The offense, if any there be, of which appellant was convicted was originally defined and may be found in Chap. 41, Acts First Called Session, 35th Legislature, the penal part of which is in Arts. 1018–1032, 1925 P. C. Art. 1031 forbids any person in this State, acting for himself or others, to operate a gin for commercial purposes without obtaining a license therefor.

The first ground of attack upon the law is that, in as much as the law makes the presentation of a bond to the Commissioner of Agriculture a necessary predicate to the getting of such license, said law is unconstitutional for that it reflects an attempt on the part of the Legislature to delegate to a board, legislative powers. On this proposition appellant cites Ex parte Leslie, 223 S. W. Rep. 227, and the well known provision of our Constitution denying to the Legislature the power or right of a delegation of its legislative power. The Leslie case, as we understand it, holds against appellant's contention. It specifically recognizes the power of the lawmakers to provide, within proper limits, punishments for violation of regulations made by boards. In that case it appeared that unlimited power was given the Live Stock Commission in various matters before the court, and the statute itself seemed to lay down no forms or boundaries for the action of the Commission, by which the people could know if the matters for which they were prosecuted were lawful or otherwise. The law in the instant case attacked, is not subject to any such criticism. The statute itself prescribes all essentials of the bond required of an applicant for license to operate a gin, as will be seen by the following quotation from same:

"The conditions and obligations in the bond shall be that the cotton ginned by the gin designated in the bond, and in its application for license, has been carefully ginned, and that no foreign matter or substance has been placed in the cotton, nor has any water or any thing that would increase the weight thereof been placed therein during the process of ginning, or thereafter, while the cotton was in possession of the gin; and that the gin will separate the dirt from

the seed; and that any sample of cotton taken from the bale during the process of ginning, as provided in this Act, is a fair and true sample of the cotton in the bale."

It is elsewhere provided in the same section of said act that the bond should be made payable to the State of Texas for the use and benefit of all persons who may have any cause of action against the makers under the terms of this act. It is also provided in Sec. 42 of said act that the bond should be approved by the Commissioner. Following Ex parte Leslie, supra, and the cases therein cited, we are of opinion there is no merit in this contention of appellant. Nothing was left to the Board save to prescribe the form of bond, whose substance was set out in the quoted statute, and whose approval was left to the Commissioner.

Again it is urged that the law under which this prosecution was had, is unconstitutional for that it puts unequal burdens upon persons in similar circumstances. The agreed statement of facts herein sets out nothing which could be taken as a basis for this court holding that there are other lines of business, or some other service to others for pay,—and for which no bond is required under the law which we might hold similar to the running of a gin. Certainly we have no judicial knowledge of any such similar occupation. Judicial knowledge is but that which is so notoriously known, as that everybody, including even judges, knows it; and hence there is no need to prove it. There may be other occupations which are public or quasi-public, but none known to us just like that of a commercial ginner who takes the raw cotton of others, separates the seed from the lint, and probably trash and refuse from both, binds the lint into bales, which may be shipped around the world without further investigation or knowledge of their contents; is sold by sample and weight, each of which might in some measure be affected by what is done in the ginning process. It is judicially known that the commodity thus dealt with is the chief money crop of this State. In the somewhat meager condition of the record, as affecting this point of contention, we have given careful consideration to each authority cited by appellant, but find in them only decisions based on facts wholly different from those here involved, in which the courts have given effect in each case to the general principle, well known and uncontrovertible, viz: that the Legislature may not pass laws violating the doctrine of equal rights and the privileges announced in Sec. 3 of Art 1 of our State Constitution. We are constrained to hold that none of said cases would authorize a like holding by us

upon such facts as are before us. The cases cited are those named below.

It is further urged that under the guise of an exercise of police power, the rights of the individual under constitutional guaranties are here invaded by this law. This is not a self-evident proposition, nor one to be established merely by statement and legal citation in a brief. Unquestionably the determination of what is a proper exercise of the police power, in any given case, is for the courts. Ex parte White, 198 S. W. Rep. 583. But facts supporting such proposition in a given case of asserted impropriety in such exercise must either be obvious, or be made to appear by proof before adjudication is called for, and indeed before any such can be had. There are statements of fact apparently deemed as reasons, in appellant's brief,—but none in the agreed statement of facts, and none obvious. We can not say as a fact that there are other lawful occupations of like relations between the public and the person engaged, as that of operating a commercial gin,—in which it would not be right to require a license and bond. We find nothing in the statement of facts from which such conclusion could be drawn. In the cases cited by appellant, viz: the Stroll case, 255 S. W. Rep. 620; the Jones case, 43 S. W. Rep. 513; the Overstreet case, 46 S. W. Rep. 825, and the Rainey case, 53 S. W. Rep. 882, there was either obvious or proven discrimination against persons or classes of persons, and hence ground for the holding in each case. It is urged in supplemental brief that the law in question is oppressive. We do not think so. The making of an annual bond with personal or corporate sureties, in the sum of not less than two hundred and fifty dollars nor more than one thousand dollars, by one engaged in commercial ginning, and the payment of a one dollar annual license fee, does not appeal to this court as a thing of unfair or grievous burden.

Appellant attacks the caption of the act of 1917, and insists that it sets out a subject of the act different from the particular part of the law affecting ginners, and that it is violative of Sec. 35, Art. 3 of the Constitution. This identical question was discussed at length in Ex parte White, 198 S. W. Rep. 583, supra, and decided adversely to appellant's contention, in an opinion rendered in 1915, prior to the enactment of the 1917 law here under attack. All the authorities hold that in construing subsequent legislation it must be borne in mind that the lawmakers could look to and depend upon the prior interpretation of the same or a similar law, given by the courts.

However, the matter of appellant's complaint on this point passes out in view of the fact that in 1925 the Legislature re-enacted in the Revised Civil and Penal Codes of that year, the law embraced in the acts of the Legislature here complained of. See Revised Civil Statutes, 1925, Arts. 5666–7–8, also Art. 1031–1032, 1925, Penal Code. We find it specifically provided in Sec. 43 of Art. 3 of our Constitution, that in the adoption of and giving effect to such revision of the entire statutes, as is instanced by the enactment into a Revised Civil and Criminal Code of the report of the codifying commission, by the Legislature of 1925,—Secs. 35 and 36 of said Art. 3 of the Constitution are not to be given application, as affecting the constitutionality of such enactment. See also American Indemnity Co. v. Austin, 246 S. W. Rep. 1019; Kennedy v. Meara, 127 Ga. 68; Anderson v. Great Northern Ry. Co., 25 Idaho, 433; Ruling Case Law, Vol. 25, Sec. 111. It is also specifically enacted in Sec. 22 of the Final Title to the Revised Civil Statutes of 1925 as follows: "No law herein shall be held void because its caption, when enacted, was in any way defective." In his brief appellant's attorney calls attention to the fact that in Globe Ind. Co. v. Barnes, et al., 280 S. W. Rep. 275, this language of said Final Title is criticised. We apprehend that the eminent jurist who wrote in that case and based his criticism of said language on the fact that Sec. 35, Art. 3 of the Constitution, forbids that any legislative bill shall contain more than one subject, which should be expressed in its title,—overlooked the provision of Sec. 43 of said Art. 3 of the Constitution.

We have given careful consideration to each point made on behalf of appellant, in the light of the able arguments, oral and written, of his counsel, but find no error in the remanding judgment, and same is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant moves for rehearing on the ground that the law attacked in this proceeding arbitrarily interferes with either a private business or a legal public occupation; and imposes unreasonable and unnecessary restrictions under the guise of protecting the public. Also that it is discriminatory and imposes burdens on the business of commercial ginning, not required of other similar occupations.

As far as we are able to ascertain, this law operates alike on all commercial ginners. There is in this record no testimony, or agreement in lieu thereof, to the effect that there is any other occupation

like that of a public ginner, which is favored by reason of having no legal restrictions thrown around it. The illustrations in the motion do not appear to us to be in point. The shoemaker who makes and sells shoes, and the miller who makes and sells flour, do not seem to be in the same class with the ginner who takes the cotton of the producer, separates the seed from the lint and puts the latter into bales for convenience in handling. The shoemaker and the miller are manufacturers putting out a product which they sell as their own business. The ginner is but an agent who gives back to the producer his product in a package whose value, if we accept the facts suggested in Ex Parte White, 198 S. W. Rep. 583, can be increased or diminished greatly by fair or unfair treatment in ginning. The individual bales can not be opened and inspected by their owners or any prospective buyer without much loss and inconvenience, and the public welfare would seem served by any law fairly in aid of such proper ginning. The payment of a dollar license fee and the giving of a bond in the sum of a thousand dollars for the faithful conduct of a private business, might be intolerable because of the principle involved, but not so when paid and given to secure fair dealing in a public occupation. Appellant cites the same authorities as originally, with the addition of Lawton v. Steele, 152 U. S. 133, and Leggett v. Boldridge, Sup. Ct. Rep. 49, p. 57. These two authorities but announce the same general principle, and neither is upon facts at all similar to those involved in the instant case. With the general principle announced in said authorities we are in entire accord, but are unable to make any application of them to the facts detailed and appearing in the record before us. From Lawton v. Steele, supra, we quote:

"Beyond this, however, the state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. Barbier v. Connolly, 113 U. S. 27 (28:923); Kidd v. Pearson, 128 U. S. 1 (32:346). * To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the

public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

This we take to mean that primarily the authority and duty rests on the legislature to investigate, ascertain and determine what the public interests require; also what laws will best conserve such interests,—and that the enactment of any law presupposes that the legislature has done its duty in this regard; also that when the final arbitrament of court decision is appealed to, the courts will hold themselves concluded by the fact of the enactment by a sovereign legislature, unless and until it be shown in some legal way that private rights are transgressed or public rights are invaded by the law called in question. We again repeat that no facts are before us in this record, nor do we have judicial knowledge of any such, as would lead us to believe the legislature transgressed its power and authority in enacting the law in question.

The motion for rehearing is overruled.

*Overruled.*