## BERRY et al. v. CITY OF FORT WORTH et al.

No. 13700.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 22, 1937.

Rehearing Denied Nov. 19, 1937.

Slay & Simon, of Fort Worth, for appellants.

R. E. Rouer, Geo. C. Kemble, and R. B. Young, Jr., all of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

L. Berry and some sixteen others, plaintiffs, have prosecuted this appeal from a judgment of a district court of Tarrant County denying them any relief in their suit to restrain the City of Fort Worth, defendant, from enforcing an ordinance hereinafter shown.

The case was tried on its merits in conjunction with a motion of the city to dissolve a temporary writ of injunction theretofore issued in chambers on the same day the suit was filed, and this appeal is from a final judgment dissolving the temporary writ and denying plaintiffs any relief on the merits of the suit.

The ordinance was duly passed and adopted by the city council of the City of Fort Worth in regular session on January 20, 1937, and reads as follows:

"Ordinance No. 1937.

"An ordinance regulating and licensing certain persons, firms and corporations engaged in the business of lending money without security within the corporate limits of the City of Fort Worth; excepting certain persons, firms and corporations; providing for the inspection and supervision of such persons, firms and corporations and their businesses; providing for the issuance, display and revocation of licenses; prescribing a bond; providing for the designation of an agent upon whom service may be had; prescribing a license fee; prohibiting the use of artifice or subterfuge; prohibiting communications with intent to harass or annoy; prohibiting communications to collect usury; providing for the keeping and inspection of records; providing for the repeal of all ordinances or parts of ordinances in conflict herewith; providing that the invalidity of a part of this ordinance shall in no way affect the remaining ones; providing a penalty for the violation of any of its provisions; and prescribing the effective date of this ordinance.

"Whereas, persons, firms and corporations are engaged in the business of lending money without security and are demanding and receiving exorbitant and unconscionable rates of interest, in violation of the state law, and such persons, firms and corporations so engaged in the business of lending money, in an attempt to obtain payment of the moneys so loaned, do wilfully and maliciously annoy the employers of their borrowers by continuous telephone calls to the annoyance and harassment of the employers and their employees in the ordinary course of business, and generally affects the public interest, all of which requires strict supervision and inspection of such money-lending business; and

"Whereas, it is deemed expedient and in the interest of the public welfare to regulate and inspect such persons, firms and corporations engaged in the business of lending money without security; Now, Therefore,

"Be it ordained by the City Council of the City of Fort Worth, Texas.

"Section 1.

"It shall hereafter be unlawful for any person, firm or corporation, either as principal or as agent or representative of another, to engage in the business of lending money to individuals without security, within the corporate limits of the City of Fort Worth, Texas, without first having obtained a license therefor and displaying the same as provided herein. The fact that the lender may require a surety guarantor or indorser shall not exempt the lender from the provisions of this ordinance.

"Section 2.

"Every person, firm or corporation, before opening, maintaining and/or operating such a business for the lending of money

in the City of Fort Worth, shall make an application for a license for each such business maintained or operated by him, upon a blank to be furnished by the City Secretary, on a form prescribed by such officer, which shall include among other things the full name and address of the applicant, both residence and place of business, including the street and number; and if applicant is a partnership or association, of every member thereof, and if a corporation, of each officer or director thereof; also the name under which the business is to be conducted. In the application for license, the applicant shall also designate, name, appoint and maintain an agent in the City of Fort Worth upon whom service may be had in the event of any suit filed against such applicant in any action arising from a violation of this ordinance, and for the recovery of damages for the charging of a usurious rate of interest prohibited by law. In the event a change is made in the residence or address of the agent, all information about such change shall be furnished promptly to the City Secretary including the name and address of the substituted agent in the event the prior agent shall have moved outside of the City of Fort Worth. A separate license and application shall be required for each establishment, office or place of business conducting the business of lending money without security, regardless of the ownership of such business. Such application for license shall be sworn to by the applicant.

### "Section 3.

"Such license shall state the address at which the business is to be conducted and the name under which the business is to be conducted, and such license shall be kept conspicuously posted in the place of business of the licensee where it may be readily available for inspection by the public.

### "Section 4.

"Licenses shall not be transferable or assignable, but shall be valid only for the use of the licensee named therein; nor shall any licensee maintain more than one place of business under the same license, but the City Secretary may issue more than one license to the same licensee upon compliance with all the provisions of this ordinance governing an original issuance of a license for each new license.

### "Section 5.

"Such license shall be valid only at the address stated in said license; provided, however, that should a licensee desire to change his place of business to another location, he shall give written notice thereof to the City Secretary who shall attach to the license, in writing, his record of the change and the date thereof, which shall be authority for the operation of such business under such license at such new location.

### "Section 6.

"After having filed said application and bond with the City Secretary and secured said license as herein provided for, the licensee shall pay to the Assessor and Collector of Taxes the sum of Fifteen Dollars ($15.00) as an annual license fee.

### "Section 7.

"That before any license shall be issued as herein provided, the applicant shall furnish in writing a good and sufficient bond in the sum of One Thousand Dollars ($1,000.00) to be approved by the City Manager. Such bond shall be conditioned that the holder of the license shall well and truly pay to the Mayor of the City of Fort Worth or his successors in office, in Fort Worth, Tarrant County, Texas, any final judgment that may be rendered against such licensee not to exceed the amount of said bond, for the benefit of every person who may recover a final judgment against the licensee, arising and growing out of the conduct of the business licensed under this ordinance; and further conditioned that any person having a cause of action against the obligor of said bond arising and growing out of the conduct of the business licensed under this ordinance may sue in his own name and recover on said bond without the joinder of the City of Fort Worth or the Mayor of the City of Fort Worth therein; and further conditioned that such person or persons may sue and recover upon said bond from time to time until the full amount is exhausted. Whenever recovery has been had on said bond so that the same is depleted or exhausted, the licensee shall immediately file a new or additional bond as herein provided for the original bond so as to maintain at all times a good and sufficient bond in the full amount of One Thousand Dollars ($1,000.00).

### "Section 8.

"It shall be unlawful for any licensee hereunder by the use of any artifice or subterfuge to demand or receive any greater rate of principal or interest than is provided for in the contract.

## "Section 9.

"It shall be unlawful for any licensee hereunder, his agents, servants or employes, to communicate with the employer of any borrower relating to any loan made by the licensee to the borrower, with intent to harass or annoy the employer of the borrower.

## "Section 10.

"It shall be unlawful for any licensee hereunder to communicate with any person other than the borrower in an effort to collect any debt growing out of business conducted by such licensee under such license, which debt is made up in whole or in part of usurious interest.

## "Section 11.

"Each licensee hereunder shall keep a complete set of records showing a list of loans made, giving the name and address of the borrower or borrowers, the amount of cash actually lent and the amount of principal and interest the borrower agreed to pay, whether such transaction was an original lending or a renewal of an existing loan, the amount of money paid to the licensee by the borrower and how the same was credited; that such books and records shall at all reasonable times during business hours be subject to inspection by the City Secretary of the City of Fort Worth and his duly authorized agents.

## "Section 12.

"Any license herein granted shall be subject to revocation by the City Council of the City of Fort Worth after due notice to the holder of such license and hearing thereon, upon proof of the violation of any of the provisions of this ordinance.

## "Section 13.

"Any person, firm or corporation who shall violate any of the provisions of this ordinance shall, upon conviction thereof, be fined in any sum not to exceed Two Hundred Dollars ($200.00), and each day's operation without a license as herein provided for shall be considered a separate offense.

## "Section 14.

"This ordinance shall not apply to any person, co-partnership, association or corporation doing business under and as permitted by the laws of this State or the United States, relating to banks, savings banks, trust companies, building and loan companies, Morris Plan Banks, licensed credit unions, licensed rural credit unions, agricultural and livestock pools and farmers' co-operative societies.

## "Section 15.

"If any clause, sentence, section, provision or part of this ordinance· shall be adjudged to be unconstitutional or invalid for any reason by any court of competent jurisdiction, such judgment shall not impair, affect or invalidate the remainder of this ordinance, which shall remain in full force and effect thereafter.

## "Section 16.

"All ordinances and parts of ordinances in conflict with the provisions of this ordinance are hereby expressly repealed.

## "Section 17.

"This ordinance shall become effective and be in full force and effect from and after the date of its passage and publication as required by law."

In plaintiffs' petition their names, trade-names, and places of business are stated as follows: "L. Berry, who resides in Fort Worth, Tarrant County, Texas, doing business under the trade names of Capital Realty Company, Able Loan Company and Peoples Realty Company; B. J. Harris, Trustee for J. H. Taylor Trust, who resides in Nashville, Tennessee, doing business under the trade names of Peoples Loan Company, Employees Loan Company, and Personal Finance Company; C. E. Crowe, who resides in Bexar County, Texas, doing business under the trade names of Crowe Loan Company and Gulf Finance Company; J. L. Wilson, who resides in Bexar County, Texas, and E. J. Baxter, who resides in Dallas County, Texas, partners doing business under the trade names of Modern Finance Company and Union Finance Company; J. H. Reagan and L. Berry, partners, who reside in Fort Worth, Tarrant County, Texas, doing business under· the trade name of City Realty Company; Installment Finance Company, a corporation; Charles R. Tate, who resides in Fort Worth, Tarrant County, Texas, doing business under the trade name of Tate Financial & Collection Service; W. L. Moore, who resides in Dallas County, Texas, doing business under the trade name of Ace Loan Company; D. C. Johnson, who resides in Fulton County, Georgia; Walter Watts, who resides in Tarrant County, Texas; J. H. Taylor, who resides in Fulton County, Georgia; H. B.· Hicks, who resides in Dallas County, Texas, doing business under the trade name of Jackson

Finance Company; E. A. Bean, who resides in Tarrant County, Texas, doing business under the trade name of Surety Finance Company; E. B. Terrell, who resides in Bexar County, Texas, doing business under the trade name of Terrell & Company; A. A. Kennedy, Jr., who resides in Harris County, Texas, doing business under the trade name of Texas Securities Company; O. A. Cotten, who resides in New Orleans, Louisiana, doing business as the Nu-Way Loan Company; and Acme Finance Company, Inc., a corporation, whose president is Mrs. F. W. Johnson, who resides in Dallas County, Texas."

It was alleged that the ordinance had been duly passed at a regular session of the city council and had become effective; that plaintiffs and each of them are engaged in a lucrative business of lending money without security within the corporate limits of the City of Fort Worth, and have investments of many thousands of dollars in said business; that they will be affected by the enforcement of the ordinance; and that they had been so engaged for a number of years prior to the passage of the ordinance in conformity with the laws of the United States and the State of Texas; that the ordinance places unlawful burdens upon them and their business, and was passed "with the design of imposing oppressive, confiscatory and prohibitive restrictions upon their continued pursuit of such business so as to make it impractical, if not impossible, to continue in the pursuit of the business of these plaintiffs, if they are compelled to comply with the terms and provisions of said Ordinance, as will hereinafter more fully appear."

Those allegations were followed by a general attack on the ordinance as a whole, and specifically on several sections hereinafter noted. It was alleged that the ordinance and its several sections operated to deprive plaintiffs of their property without due process of law and of equal protection of the laws in violation of the guaranty of the Fourteenth Amendment of the Federal Constitution and art. 1, §§ 3 and 19, of our State Constitution, the latter section including within its protection "privileges or immunities" as well as "life, liberty and property."

The principal basis for all of those attacks is the contention that the ordinance and the several sections challenged are arbitrary and unreasonable and discriminatory in that they apply to plaintiffs, but do not apply to others of the same class pursuing a like business under like conditions; in other words that they constitute what is generally termed "class legislation," forbidden by the provisions of the Federal and State Constitutions noted.

Defendant's motion to dissolve the temporary writ of injunction and answer to the merits of plaintiffs' petition included numerous special exceptions to its sufficiency, none of which were ruled on by the trial court, nor does it appear such a ruling was invoked by the city. The answer also included admissions of the truth of plaintiffs' allegations as to the passage of the ordinance and the transactions of plaintiffs' businesses within the City of Fort Worth, but specifically denied all other material allegations in plaintiffs' petition.

Plaintiffs' petition and defendant's motion to dissolve the temporary injunction and its answer to the merits were all duly verified.

The case was tried before the court without a jury, and the following agreement of facts was filed before judgment was rendered:

"It is agreed and stipulated by the parties to this case, acting through attorneys of record, that this case, at this time, is to be heard on its merits and all parties announce ready for trial on the merits and that this hearing shall constitute a final hearing in this case.

"It is further stipulated and agreed that the following facts may be taken as proved, without the introduction of sworn testimony thereon, as follows:

"That the plaintiffs, as described in the plaintiffs' original petition, are doing business in the City of Fort Worth under various trade names, and in various capacities, as alleged in said petition and are residents of the cities, counties and states as set out in said petition, and that the plaintiffs and each of them are engaged in the business of lending money to individuals without security, in the City of Fort Worth and are conducting said business in twenty-four separate offices; that the plaintiffs and each of them have in excess of one thousand dollars invested in their respective business of lending money to individuals without security and have at this time debts and obligations owing to them in excess of said amount; that plaintiffs, in the aggregate, have approximately the sum of two hundred thousand dollars invested in said businesses of lending

money to individuals without security, and have outstanding obligations of approximately one hundred and fifty thousand dollars, owing by individuals in the City of Fort Worth.

"It is further stipulated that it is admitted that Section 7, Chapter XXVI of the Charter of the City of Fort Worth reads as follows:

"Ordinances to contain only one subject:—

"All ordinances and resolutions, except ordinances making appropriations, shall be confined to one subject, which shall be clearly expressed in the title. The ordinance making appropriations shall be confined to the subject of appropriations.

"It is further stipulated that the sum of Fifteen Dollars provided as an annual license fee, under Section 6 of Ordinance 1937 is not more than is reasonably necessary to enforce the provisions of said ordinance and is a license fee and not an occupation tax."

The City of Fort Worth is operating as a home rule city under provisions of article 11, § 5, of the State Constitution, reading in part as follows: "Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."

By article 1165, Rev.Civ.Statutes, that provision of the Constitution was adopted as a statute of the State, together with other statutes prescribing when the election should be held, the procedure to be followed, etc.

Article 1175 of the same title and chapter reads:

"Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty: * * *

"23. To license any lawful business, occupation or calling that is susceptible to the control of the police power."

This announcement in 30 Tex.Jur., § 49, p. 104, under the heading "Home Rule Cities," is sustained by numerous decisions cited in the footnotes: "The powers of such cities are derived, not from the Legislature, but directly from the people. The amendment substitutes the rule of the local inhabitants of the city for the rule of the Legislature; and it is no longer necessary for the Legislature to confer power upon them to act. Nor is it necessary to look to the acts of the Legislature for a grant of power; only limitations on the power to act need be considered. The Constitution, the Enabling Act, and the general laws of the state in pari materia constitute the fundamental laws of home rule cities, ranking in the order named. In addition, the cities themselves may legislate, subject only to the restriction that they may not enact any laws inconsistent with the general laws of the State."

We quote further from section 16, page 129, as follows: "An ordinance is general and uniform in its operation, and not open to attack on the ground of being class legislation, where it affects equally every one engaged in the same business. A reasonable, sound and just classification of persons and things for the various purposes of legislation is permissible where the ordinance applies alike to all similarly situated. A municipality may classify persons, organizations and corporations according to their businesses, and apply different rules to different classes, without violating either the state or federal Constitution. The controlling test of the validity of an ordinance directed against a particular class is that the same means and methods shall be impartially applied to all the constituents of the particular class, so that the ordinance shall operate equally and uniformly upon all persons therein. All that is required is that the legislation must be made to apply to all persons alike under the same conditions. Mere difference is not enough to form the basis for classification, but it must rest upon some reasonable and just difference, having relation to the act or thing with respect to which the discrimination is made. It must not be based upon an insidious and unreasonable distinction, or differ with reference to similar kinds of conditions; but with such limitations the powers of municipal bodies are supreme."

In Borden's Farm Products Co., Inc. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 192, 79 L.Ed. 281, opinion by Chief Justice

Hughes, this is said: "When the classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary."

In Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 163, 80 L.Ed. 138, 101 A.L.R. 853, opinion by Justice Brandeis, this is said: "The order here in question deals with a subject clearly within the scope of the police power. See Turner v. Maryland, 107 U.S. 38, 2 S.Ct. 44, 27 L.Ed. 370. When such legislative action 'is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge, or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary.' "

To the same effect was the decision in Hardware Dealers Mutual Fire Ins. Company of Wisconsin v. Glidden Co., 284 U. S. 151, 52 S.Ct. 69, 76 L.Ed. 214, and numerous cases cited in the cases just noted.

In 9 Tex.Jur. § 58, p. 475, § 60, p. 479, many decisions of our state courts are noted in support of this announcement: "Upon the issue as to whether or not an act of the Legislature is unconstitutional, the burden rests upon the party who attacks its validity to show that the act is forbidden by a provision of the constitution. While a law is not to be held constitutional where a question arises as to whether the legislature has acted within its powers, the presumption is that it has done so. That is to say, a statute is presumed to be constitutional, or as it has been expressed, 'every presumption is in favor of the validity of legislative acts.' Indeed, it is said that every reasonable doubt as to the validity of the act must be resolved in favor of sustaining it, and that the enactment will not be held to be invalid unless the court finds it absolutely necessary so to hold."

■ It is also a general rule that, when the validity of an ordinance depends upon the existence of certain facts, the finding of those facts by the city council cannot be set aside except when clearly unreasonable or overcome by evidence adduced. 19 R.C.L. § 113, p. 807.

■ The facts recited in the ordinance as a basis for its enactment were not controverted by any evidence and must be accepted as true. Accepting them as true, we cannot say that the ordinance based thereon is unreasonable.

Many decisions of our appellate courts and of the Supreme Court of the United States support this announcement in 9 Tex. Jur. p. 507: "Neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community. The exercise of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law. The decisive question is whether or not the action is sustained by the existence of facts affecting the public welfare sufficient to justify such an application of the police power. The answer to this question determines whether or not the action constitutes due process of law. The mere fact that a law necessary for the welfare of society regulates trade or business, or to some degree operates as a restraint thereon, does not make it unconstitutional."

■ The manifest purpose of the ordinance was to protect wage earners or others in financial straits who are unable to borrow money in the usual way, from the burden of paying exorbitant interest on usually small loans, and from the danger of the wage earner of losing his job on account of annoyances of his employer through complaints to him by the lender of failure of his employee to pay his loan; all of which facts are recited in the ordinance. In view of those fact findings, it cannot be said there is no reasonable basis for distinguishing the business pursued by plaintiffs from that of other money lenders expressly excluded from the scope of the ordinance. As said in the opinion of the Supreme Court in Union Bank & Trust Co. v. Phelps, 288 U.S. 181, 53 S.Ct. 321, 77 L.Ed. 687, 83 A.L.R. 1438:

"We cannot say that the state Legislature exceeded its power to make reasonable classification when it directed that moneyed capital or the property and shares of building and loan associations, industrial loan corporations, industrial banks, mortgage companies, etc., should be exempt from ad

valorem taxation or taxed on a different basis from the one prescribed for banks accepting deposits and doing a general commercial business, notwithstanding actual competition between them.

"Mere competition between them is not enough to show two concerns must be burdened alike. The state Legislature reasonably might have determined that there was fair ground for distinction; and upon the record we may not hold that its action was arbitrary, capricious, or wholly unreasonable."

Attacks on the constitutionality of various statutes, on the ground of unwarranted discrimination, were overruled in the following cases:

Dorris Griffith v. State of Connecticut, 218 U.S. 563, 31 S.Ct. 132, 54 L.Ed. 1151. The statute in question there made it unlawful to charge more than 15 per cent. interest, but exempting from its operation state or national banks or mortgages on real or personal property.

State v. Wickenhoefer, 6 Pennewill 120, 64 A. 273, by the Supreme Court of Delaware. The statute in question there placed certain restrictions on loans of less than $100 which did not apply to those in excess of that sum.

Dewey v. Richardson, 206 Mass. 430, 92 N.E. 708, by the Supreme Court of Massachusetts. The statute there in question was regulatory of loans of money but limited its application to loans of $200 and less, drawing interest at a greater rate than 12 per cent. and with no security other than a note or contract with or without an indorser. And in overruling the challenge of unlawful discrimination between such loans and others not embraced in the statute, the court said: "The Legislature evidently had in mind the danger that such a business, if left without regulation, would be conducted oppressively, and the statute was enacted with a view to furnish a degree of protection to borrowers," citing many other decisions in support of that holding.

Louis K. Liggett Co. v. Lee, Comptroller of the State of Florida, 288 U.S. 517, 53 S.Ct. 481, 483, 77 L.Ed. 929, 85 A.L.R. 699, upholding the validity of what is commonly known as the "chain store" tax, in which this is said: "In support of the allegation of arbitrary and unreasonable discrimination, the bill recites facts from which appellants claim the conclusion is inevitable that there is no difference between the method of conducting chain stores and those employed in department stores, so-called voluntary chains, and singly operated units. This is but a reiteration of the contention made and overruled in State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A. L.R. 1464, [75 A.L.R. 1536]. It was there held that, whatever may be said of individual similarities and differences between chain store operation and the conduct of a single shop or a department store, the former employ distinguishable methods of conducting business, and the Legislature may make the difference in method and character of the business the basis of classification for taxation."

Union Central Life Ins. Co. v. Chowning, 86 Tex. 654, 26 S.W. 982, 24 L.R.A. 504, involving a statute allowing a recovery of 12 per cent. of the face value of a life insurance policy together with reasonable attorneys' fees for failure to pay the amount accrued thereon after demand therefor.

See, also, Mims v. City of Fort Worth (Tex.Civ.App.) 61 S.W.(2d) 539, and Waid v. City of Fort Worth (Tex.Civ.App.) 258 S.W. 1114.

■ Article 2026, Rev.Civ.Statutes, requiring personal service of citation on the defendant in a suit against him, is a general statute, but many other statutes authorize service upon agents of defendants.

Article 2031a, Vernon's Ann.Civ.St., requires foreign corporation, as a prerequisite for permit to do business in the State, to file in the office of the Secretary of the State a power of attorney designating some individual resident of the State as its service agent on whom process may be served.

Article 2039a, Vernon's Ann.Civ.St., provides that the operation of motor vehicles on the public highways of the State through an agent shall be deemed equivalent to appointment of the chairman of the State Highway Commission as his agent upon whom service of judicial process may be had, and that such service shall be of the same legal force and validity as if served personally.

Articles 2039 and 2040, Rev.Civ.Statutes, provide for service by publication against a defendant whose residence is unknown or is a transient person or a nonresident of the State.

Articles 2033b and 2033c, Vernon's Ann. Civ.St., provide that, where an individual,

partnership, or incorporated association is doing business in the State, service may be had upon any agent employed in any county other than the county in which the principal may reside or have his or its legal domicile.

It cannot therefore be said, as insisted by appellants, that the provision in the ordinance, requiring the appointment of a local agent on whom judicial process may be served, is prohibited by the limitations expressed in the Home Rule Amendment to the Constitution merely because inconsistent with article 2026, Rev.Civ.Statutes.

In Black's Law Dictionary, page 613, the term "inconsistent" is thus defined: "Mutually repugnant or contradictory; contrary, the one to the other, so that both cannot stand, but the acceptance or establishment of the one implies the abrogation or abandonment of the other; as, in speaking of 'inconsistent defenses,' or the repeal by a statute of 'all laws inconsistent herewith.' See In re Hickory Tree Road, 43 Pa. 139, 142; Irwin v. Holbrook, 32 Wash. 349, 73 P. 360, 361; Swan v. U. S., 3 Wyo. 151, 9 P. 931."

A like definition is given in Webster's Dictionary.

In Wessell v. Timberlake, 95 Ohio St. 21, 116 N.E. 43, Ann.Cas.1918B, 402, the Supreme Court of Ohio upheld the validity of a statute providing that no license should be granted to certain loan companies unless the applicant therefor shall appoint a resident agent on whom service of judicial process may be had.

In Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 554, 79 L.Ed. 1097, it appeared that Doherty, a citizen of New York, was transacting business in Des Moines, Iowa, under the trade-name of Henry L. Doherty & Co. One King was his acting district manager in Des Moines. In the suit against him by Goodman service was had on King, as authorized by a statute of the state of Iowa. The Supreme Court overruled the contention made by Doherty that the statute was violative of the Fourteenth Amendment of the Federal Constitution and upon that point said:

"Doherty voluntarily established an office in Iowa and there carried on this business. Considering this fact, and accepting the construction given to section 11079, we think to apply it as here proposed will not deprive him of any right guaranteed by the Federal Constitution.

"Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250, much relied upon, does not sustain appellant's position. There the service was made upon one not then agent for the defendants; here the situation is different. King was manager of the appellant's office when the sale contract was made; also when process was served upon him. Moreover, under the laws of Iowa, neither her citizens nor nonresidents could freely engage in the business of selling securities.

"The power of the states to impose terms upon nonresidents, as to activities within their borders, recently has been much discussed. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 260, 72 L.Ed. 446, 57 A.L.R. 1230; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170. Under these opinions it is established doctrine that a state may rightly direct that nonresidents who operate automobiles on her highways shall be deemed to have appointed the secretary of state as agent to accept service of process, provided there is some 'provision making it reasonably probable that notice of the service on the secretary will be communicated to the nonresident defendant who is sued.' * * *

"There is not only 'reasonable probability,' but practical moral certainty, that the defendant will receive actual notice of the pendency of the action."

Those decisions are distinguishable on the issues involved from Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, and others following it, cited in appellants' briefs.

The requirement of plaintiffs to acquire a license to pursue their business as money lenders was specifically authorized by article 1175, subd. 23, Rev.Civ.Statutes. The further requirement to execute the bond specified was not inconsistent with any state statute. Indeed, such bonds are specifically required by many statutes of persons and corporations transacting business in the State, including the following: article 6147, Pawnbrokers; article 6165, Loan Brokers; article 4925, Foreign Insurance Corporations; article 4969, Fidelity, Guaranty and Surety Companies; article 4982, Certain Trust Companies; articles 4739, 4740 and 4741, Life, Accident and Health Corporations; article 911a (Vernon's Ann.Civ.St.), requiring motorbus companies transporting passengers for hire to carry policies of insurance to cover liability to such persons.

In Juhan v. State, 86 Tex.Cr.R. 63, 216 S.W. 873, 878, our Court of Criminal Appeals condemned as unconstitutional the loan broker statute because the amount of the bond required was so excessive as to prohibit pursuit of the loan business, and further because of the requirement that the broker should appoint the county judge as his agent for service of process in any suit against the broker. We quote the following from the opinion on rehearing:

"There is no provision in this law requiring the county judge to notify, or in any other way acquaint, the loan broker with the fact that he has accepted service or been served with citation in any suit against him, which fact may result from the consideration that it would do the loan broker no good, inasmuch as he could not take any steps to release himself by reason of any defect in the citation. It might be very questionable, if necessary to a decision of this case, as to whether the county judge could in any event be compelled to act as such agent or attorney in fact, or put himself to any trouble by reason thereof, or take any action with regard thereto. * * *

"It thus appears that the bond and sureties would not only be held for the acts of appellant while actually engaged in the line of his business as a loan broker, but also for any other sum for which he might be liable under the laws of this state."

However, the loan broker statute was later so amended as to eliminate those objections. See further Ex parte Ferguson, 112 Tex.Cr.R. 152, 15 S.W.(2d) 650.

The word "security" is a word in common use and the failure to define it did not render the ordinance invalid as further insisted by appellant.

The manifest purpose of the requirement to procure license, execute a bond, and appoint an agent upon whom service of judicial process may be had, was to prohibit the charge and collection of usurious interest denounced by the Constitution and statutes as unlawful. Those requirements were well within the police powers of the city and were not inhibited by any constitutional or statutory provision. 30 Tex.Jur. § 57, p. 119; 43 C.J. § 202, p. 203, and decisions there cited.

For the reasons stated, all assignments of error are overruled and the judgment of the trial court is affirmed.