### COFFEE *et al. v.* RAGSDALE, ordinary.

1. When the sheriff of a county selects a newspaper in which to publish his legal advertisements, that newspaper becomes, under the code, the official medium for all county advertisements, and the code makes it the duty of the ordinary and the person or persons who have charge of county matters to publish their advertisements therein.

45

2. If, in an application to compel the ordinary to publish his advertisements in the paper selected by the sheriff, the proprietor of such paper alleges that he applied to the ordinary, as probate judge of the county and as the person controlling county matters, to publish his advertisements in the paper thus selected, and that the ordinary in both capacities refused to do so but continued to publish his advertisements in another paper, and if the allegations in the application show that the relator has a special interest in the publication of the advertisements in the proper medium, a demurrer thereto should be overruled.

3. Upon such a demand and refusal and continuance to advertise in another paper, it is not necessary that the application for mandamus should specify any one or more particular advertisements.

Argued January 11, — Decided January 28, 1901.

Petition for mandamus. Before Judge Lumpkin. DeKalb superior court. October 19, 1900.

*J. N. Glenn* and *Westmoreland Brothers*, for plaintiffs.
*Charles W. Smith* and *Rosser & Carter*, contra.

SIMMONS, C. J. Theo. S. Coffee and Tipton Coffee, as the proprietors and publishers of the "DeKalb Standard," a weekly newspaper of DeKalb county, applied for a writ of mandamus against the ordinary of DeKalb county, to compel him to publish in their paper all of his legal advertisements and citations, both as probate judge and as the person having charge of county matters. They made the following allegations: Prior to May, 1900, the sheriff of the county had published his legal advertisements in the DeKalb New Era, another newspaper published in the county. In May, 1900, he decided to change from the New Era to the Standard. The sheriff carried the notice of the contemplated change to the New Era for publication in accordance with the requirements of section 5460 of the Civil Code, but the proprietor of the New Era refused to publish the notice of the change. Thereupon the sheriff published the notice in the Atlanta Journal, a newspaper in an adjoining county, and in the Standard. From that time, he published in the latter paper all of his legal advertisements. After the sheriff had made this change, the proprietors of the Standard applied to the ordinary of the county and demanded of him that he publish in the Standard all of his legal advertisements, not only those emanating from the court of ordinary, but also, inasmuch as the ordinary had control of county matters, those relating to such matters. The ordinary absolutely refused to comply with the demand, and continued to publish

his advertisements in the New Era. The relators further alleged that they had a special interest in the advertisements, in that the publication of the ordinary's advertisements in their paper would, at the legal rates, yield them a compensation of about a certain sum of money. They also alleged that they brought the petition, not only as the proprietors of the Standard, but also as citizens and taxpayers of DeKalb county. A rule nisi was granted, and upon the hearing the ordinary filed a motion to quash the rule nisi and to dismiss the application. This motion, in the nature of a demurrer, was based upon numerous grounds of which the following are the most important: That the facts set up do not constitute any lawful reason for granting a mandamus. That the plaintiffs have no right to represent the public in this case, and do not show that they have any such right, title, interest, or property in the advertising to be done as would justify a mandamus in their behalf. That the plaintiffs do not sufficiently designate the class or character of advertisements the ordinary should be compelled to publish in the Standard. That the general demand made was not sufficient, because, as to a large number of the advertisements emanating from his office, the ordinary has a discretion in selecting the paper in which to publish them. That the law does not require the ordinary to publish his advertisements in the same paper in which the sheriff's advertisements are published. The trial judge sustained the motion and dismissed the application. To this the relators excepted.

1. The question presented in this case has vexed county officers for a very long time. We have ourselves encountered no little difficulty in coming to a conclusion upon it, on account of the vague and indefinite expressions used in some of the sections of the code, usually relied upon by ordinaries when they are determined to publish their advertisements in a paper other than that selected by the sheriff. But, after a careful examination of all the sections relating to this matter, we have concluded that when the sheriff has selected a newspaper in which to publish his legal advertisements, such paper becomes the legal medium of the advertisements of the county and the official organ in which should be published the legal advertisements of all the officers of the county. We shall undertake to show that this is correct, and if it is, section 5460 of the Civil Code, properly construed, means that when the sheriff does make a change in the advertising medium, he shall give notice thereof in the manner

prescribed by that section, and the coroner and other county officers charged with the duty of publishing official advertisements must give like notice of such change. No other view of this section is consistent with all the statutes relating to the subject of county advertisements. In the present instance, the sheriff undertook to give this notice of his intention to change by publishing it in the old advertising medium, but the proprietor of that paper refused to publish it. The sheriff thereupon published the notice in the newly selected medium, and in another paper in an adjoining county. This, we think, was a sufficient advertisement of the intention to change. Of course, as the proprietor of the old medium refused to publish the notice, the sheriff could not publish the notice in that medium, and the publication in the other papers was, under the circumstances, sufficient. Section 345 of the Political Code requires the county authorities to advertise all contracts, which are likely to involve more than $5,000, in the paper in which the sheriff advertises. Section 368 requires the same authorities to advertise in the same medium all contracts for bridges between different counties, where the cost is likely to exceed $5,000. Section 1744 requires the ordinary to advertise estrays in the same medium. In case the county authorities wish to issue bonds and an election is called to determine the question, advertisement must be had in the same medium. Pol. Code, § 377. In advertising applications for change of county-site, the same paper is the required medium. Ibid. § 391. Where an election is to be held to authorize the levy of a school tax recommended by the grand jury, section 1399 requires advertisement in the same medium. If a local bill is to be introduced in the legislature, section 314 requires that notice thereof shall be published in the same medium. Section 1844 of the Civil Code requires advertisement in the same medium, where certain corporations wish to change their names or places of business. In the same medium the incorporation of canal companies (Civil Code, § 1988), of navigation companies (§ 2148), of railroad companies (§ 2160), of street-railroad companies (§ 2180) and of the organization of express companies (§ 2001) are required to be advertised. Under section 1946 the quarterly reports of State banks are to be published in the paper in which the sheriff's sales are published. In the same paper service on non-residents by publication must be made. Civil Code, § 4978. The requirements of these numerous sections show to our

minds that that newspaper which the sheriff has selected is the medium of county advertising and the official advertising organ of the county. Proceedings to incorporate a bank must be published in "the official organ of the county"; to incorporate an insurance company, "in the newspaper publishing the legal advertisements of the county."

When we come to look at the duties of the ordinary as a probate judge, we find that section 3394 of the Civil Code requires him to issue citation and give notice of the application for letters of administration "in the gazette in which the county advertisements are usually published." Where an administrator applies for leave to sell land of the estate of the decedent, notice of the application shall be published "in the gazette in which the county advertisements are published." Civil Code, § 3450. A foreign executor, administrator, or guardian can not transfer stock, etc., until he has given due notice "in the paper in which the sheriff's notices are published." § 3525. When an administrator is required to make deeds under bonds for title in certain cases, notice must be given "by publication in the gazette publishing the legal advertisements of the county." Civil Code, § 3441, as amended by the act of November 11, 1899 (Acts 1899, p. 34). When a guardian wishes to sell the estate of the ward for reinvestment, notice of his intention to apply for leave to do so must be published "in the newspaper in which county advertisements are usually published in the county." Civil Code, § 2546. The newspaper in which the sheriff advertises being the medium or official organ for county advertisements, these sections of the code manifestly mean that the notices required therein shall be published in that paper. And it is the duty of the ordinary, both as probate judge and as the person having control of county matters, to insert his advertisements in the same paper. These sections of the code seem to indicate an intention on the part of the legislature to have all the official advertisements of the county made in the same paper, so that the people may know where to look for information in regard to the official business of the county. If the law were otherwise, then in counties, such as Fulton, which have a large number of newspapers, and, indeed, in any county having more than one, people interested in county matters would be put to considerable trouble and expense. They could not know in what paper to look for county advertisements, and

would be compelled, in order to avoid missing some of these advertisements, to subscribe for all of the papers in which legal advertisements might be published and to examine all of these papers for such advertisements. It is far better to have the advertisements all in one paper, and the legislature seems to have contemplated that this should be done.

2. The paper selected by the sheriff being the official advertising organ of the county, when the proprietors of that paper applied to the ordinary, both as probate judge and as the person having control of county matters, to publish his advertisements in their paper, it was his duty to comply with their application. When they applied to the court for a writ of mandamus to compel him to comply with his legal duty, and made the allegations above set out, the court erred in dismissing the application. A demand and an absolute refusal were clearly alleged, and also that the ordinary continued to advertise in the New Era, the former medium of advertising in the county. The refusal of the ordinary was a refusal to perform a ministerial act which the law required him to perform, and which he could be compelled to perform by mandamus. The relators set up a special interest in the matter, and set out the amount of such interest by showing what amount would probably have to be paid to them for publishing at the legal rates the advertisements of the ordinary. They thus showed a special interest in the advertisements of the ordinary in his capacity as judge of probate and also in his capacity as the person having charge of county matters. *Savannah & Ogeechee Canal Co.* v. *Shuman*, 91 *Ga.* 400. We think these allegations were sufficient, and that it was not necessary for them to specify any particular advertisements which the ordinary had refused to publish in their paper. It was useless to do this, when it appeared that he absolutely refused their demand and continued to publish his legal advertisements in the other paper. "The law never demands a vain thing, and when the conduct and action of the officer is equivalent to a refusal to perform the duty desired, it is not necessary to go through the useless formality of demanding its performance. Anything showing that the defendant does not intend to perform the duty is sufficient to warrant the issue of a mandamus." Merrill, Mand. § 225. See also 14 Am. & Eng. Enc. L. 107. Had the refusal of the ordinary been conditional or equivocal,—had he simply stated that

he would consider the matter when he had occasion to advertise, or had he inquired what particular advertisements were referred to,— the case would have been different. His absolute refusal to comply with the law, upon the demand of persons interested, and the continuance of his illegal conduct in defiance, we may say, of the demand, is sufficient to sustain a mandamus.

3. And this is true although there may be no specification of any particular matter or particular advertisement which he refused to publish in the relators' paper. He refused, generally, to comply in any respect. It may be said that the application for mandamus covered more than the ordinary was authorized or required to comply with, and that it may turn out upon the hearing that some of the advertising asked for by the relators is not such as the ordinary has to publish in their paper; and that, therefore, not being entitled to all they ask, the relators can get nothing. We admit that this was the rule in England, and that it has been adopted in some of the States of this country, but several States have repudiated it and held that the fact that the relator demands more than his right is no good reason for refusing to give him that to which he is entitled. We think this latter the proper rule, and that, under the rules of pleading and practice in this State, it must be the rule here. The writ of mandamus in this State is a very different thing from the old writ of mandamus in England. Merrill, Mand. § 291. After considering carefully the application for mandamus and the various demurrers thereto, we are of opinion that the court below erred in dismissing the application.

*Judgment reversed. All the Justices concurring.*