## DOLLAR, sheriff, *et al.* v. WIND.

1. The advertisements of the sheriff's sales and other official advertisements required by law to be published by county officers had for a long time been published in a particular newspaper in a certain county. On or about July 26, 1910, the sheriff agreed with the lessee and editor of another newspaper, which had just been established in the county, that the official advertisements should be published in the latter newspaper, beginning August 31 thereafter. Before any notice of change had been advertised or any actual change had taken place, the act of August 15, 1910 (Acts 1910, p. 87), was passed, by which the power to select the advertising medium was removed from the sheriff alone and conferred upon him, the ordinary, and the clerk jointly, and they were prohibited from selecting a newspaper which had not been published for two years, if there was one in the county which had been published for that length of time. *Held,* that the change had not been consummated before the act was passed, and after its passage the county advertisements could not be published in the newly established paper. Nor, after the passage of the act, could such a change be accomplished by means of a declaration on the part of the sheriff, ordinary, and clerk that they ratified what the sheriff had previously done and designated the new paper as the official organ or newspaper in which such advertisements should be published.

2. Where the sheriff, ordinary, and clerk refused to continue to publish their official advertisements in the proper newspaper, and declared their intention to publish such advertisements in another newspaper which they could not lawfully select, and proceeded to put the declaration into effect, the proprietor of the newspaper having the legal right to publish such advertisements could, by mandamus, compel such officers to insert the official advertisements in that paper.

3. The act of August 15, 1910 (Acts 1910, p. 87), was not invalid on the ground that it violated article 1, section 3, paragraph 2, of the constitu-

tion, which prohibits the passage of any retroactive law or law impairing the obligation of contracts, because the sheriff had agreed before its passage to change the official advertisements of the county from the then official newspaper to another which had been newly established, but had not actually made the change.

4. The act of August 15, 1910, did not violate article 3, section 7, paragraph 8, of the constitution, which declares that no law shall pass which contains matter different from what is expressed in the title thereof.

FEBRUARY 18, 1911.

Mandamus. Before Judge Park. Grady superior court. October 3, 1910.

*R. C. Bell* and *W. J. Willie,* for plaintiffs in error.

*J. Q. Smith,* contra.

LUMPKIN, J. Mrs. F. J. Wind applied for the writ of mandamus against the sheriff, the ordinary, and the clerk of the superior court of Grady county, to compel them to publish in the Cairo Messenger, a newspaper published at the county site of that county, the legal notices and advertisements emanating from their respective offices and required by law to be published. The presiding judge overruled a demurrer to the petition, and allowed an amendment thereto. The case was tried by the judge without a jury. The substantial facts were as follows: The plaintiff owns and conducts the Cairo Messenger, a weekly newspaper published in Cairo, the county site of Grady county. It has been the official organ of Grady county ever since that county was organized. The sheriff has been giving to the plaintiff his legal advertisements for publication since he went into office, and his predecessor did likewise. She has printed the legal advertisements at the rates and for the fees allowed by law, and is ready to continue to do so. The income (profits) derived from printing such legal advertisements amounts to about $500 per annum. The Grady County Progress, a weekly newspaper also published at Cairo, was first issued on July 22, 1910. Between July 22 and July 26, the sheriff made an agreement with the lessee and editor of the latter newspaper, whereby he agreed to furnish to that paper for publication all the advertisements of sheriff's sales, and all other legal advertisements emanating from his office on and after August 31, 1910, and the lessee and editor of the paper agreed to accept and publish such advertisements at the legal rates fixed by the Civil Code (1895), § 5461 (Civil Code (1910), § 6066). On July 26, the sheriff prepared a notice that from and after August 31 the Grady County Progress would be

the official organ of the county. Some days later he showed this to the clerk and ordinary, and to the clerk of the board of commissioners of roads and revenues, at the time informing them of his agreement in regard to publishing. legal advertisements in the Grady County Progress after August 31. On August 15 an act of the legislature was passed, regulating the selection and manner of changing newspapers in which official advertisements should be published. Acts 1910, p. 87. On August 16 the sheriff tendered to the Cairo Messenger for publication the notice of change referred to above. The publication was refused. It was published in the Grady County Progress on August 19 and August 26. On September 16, in the same paper, was published a notice signed by the sheriff, the ordinary, and the clerk, which stated that they ratified the action of the sheriff in selecting and designating the Grady County Progress as the official newspaper of the county, and in addition that they thereby "jointly and concurrently select, designate, declare, and make the Grady County Progress the official organ or official newspaper of said county, in which, from and after this date, shall be published all advertisements commonly known and termed official or legal avertising, and required by law to be published in the county official newspaper." The ordinary, sheriff, and clerk were stockholders in the Progress Publishing Company, which owned the Grady County Progress. The plaintiff made demand upon each of them to continue to publish the county advertisements in the Cairo Messenger, but this was refused.

The presiding judge granted the mandamus absolute, and the respondents excepted.

1. The Code of 1895 required that legal advertisements should be published in a newspaper in the county, if there should be one. By the act of 1899 it was provided that they should be published in a newspaper at the county site, if one should be there published and should accept the advertisements at the legal rates prescribed. Civil Code (1895), §§ 5457, 5461, 5462; Acts 1899, p. 40. By section 5460 it was declared that "No sheriff, coroner, or other officer shall change the advertising connected with his office from one paper to another, without first giving notice of his intention to do so, in the paper in which his advertisements may have been published." Whether this provision be treated as mandatory or directory, it imposed a duty on the officer in connection with making

any change in the advertising medium of the county, and he violated his duty if he made a change without compliance with it. If a change made without a compliance with this statute would be valid, it would only be so when the change had been actually made. A mere private declaration of an intention to make a change in the future, or an agreement with a publisher that at some future time a change should be made, was not a completed change. In this case, before any notice had been published or any change had been completed, the legislature passed the act of August 15, 1910 (Acts 1910, p. 87). That act provided that from and after its passage no newspaper should be declared or made the official organ of any county for the publication of legal advertisements unless it should have been continuously published and mailed to a list of bona fide subscribers for a period of two years, or should be the direct successor of such newspaper; and also that no change should be made in the official organ of publication except upon the concurrent act of the ordinary, sheriff, and clerk of the superior court of the county, or a majority of them. Provision was made for cases in which there might be in the county no newspaper which had been established for two years. This act having been passed before there was an actual change in the medium of publication, and before notice of intention to change was published, the Grady County Progress could not thereafter be selected as the newspaper in which the official advertisements should be published, it having been established only a few weeks. The effort of the three officers to ratify the action which the sheriff had taken before the act of the legislature was passed was ineffectual. The power conferred upon them was prospective. They had no authority to ratify incomplete past action on the part of the sheriff. Their effort to declare that the Grady County Progress should be the paper in which such advertisements should be made was equally ineffectual, because in violation of the statute.

2. It was urged that mandamus would not lie to compel the sheriff, ordinary, and clerk to publish their legal advertisements in the Cairo Messenger. In support of this contention the case of *Tillman* v. *Thrasher*, 61 *Ga.* 15, was cited. The opinion in that case did not discuss the grounds on which it was based, but merely stated that if the plaintiff had any remedy, it was by an action for damages, and that the court did not know of any law which entitled the plaintiff to make the sheriff, by mandamus, "change the advertising

back into his newspaper." Without discussing the correctness of the ruling, it is sufficient to say that the case differs widely from that now before us. An examination of the record on file shows the importance of the words just quoted. The applicant for mandamus alleged that the advertisements of the county had been published in his newspaper for a number of years; that about the first of November, 1877, without giving thirty days notice of any change, the sheriff stopped advertising in the plaintiff's paper, and began and continued to publish the official advertisements of his office in another newspaper in the same town. The application was made on May 20, 1878. Thus the change had been made and the advertising had proceeded for nearly seven months in the second paper, when the proprietor of the first sought to have it restored to him by mandamus. In the case at bar, the proprietor of the newspaper in which the advertisements had been published refused to recognize the right of the sheriff or the other officers to make the change, and proceeded promptly upon their attempting to do so. There no question was raised as to the legality of publishing the advertisements in either of the two newspapers, but the only point made was in regard to the change. Here the newspaper in which it is sought to publish the advertisements is not legally qualified to be selected for that purpose. That mandamus is a proper remedy has been distinctly held in *Coffee* v. *Ragsdale,* 112 *Ga.* 705 (37 S. E. 968), and in *Braddy* v. *Whiteley,* 113 *Ga.* 746 (39 S. E. 317). We are requested to review and reverse the decision in the first of these cases, but we see no reason for doing so.

3. It was urged that the act of 1910 was unconstitutional on the ground that it violated article 1, section 3, paragraph 2, of the constitution (Civil Code (1910), § 6389), which declares that no retroactive law or law impairing the obligation of contracts shall be passed. The part of the act thus attacked was that which declared that no newspaper which had not been published for two years should be selected as the official organ of any county. We fail to appreciate the force of this argument. Sheriffs are public officers. Their duties can be changed or modified by the legislature. That body can prescribe reasonable qualifications for a newspaper before it shall be selected as a medium in which shall be published advertisements of sheriff's sales, citations, and other similar advertisements. The rights of the public may be injuriously affected by

the selection of an improper medium for giving such notices. Be-, cause the sheriff.intended, or even agreed, to place official advertisements in future in some newspaper, this could not prevent the legislature from regulating legal advertisements for the public good. Under the Civil Code (1895), § 5462 (Civil Code (1910), § 6067), and the amendatory act of 1899, if the officer was unable to procure the advertisements at rates prescribed by law in a newspaper published at the county site, he was authorized to have them published at such rates in another newspaper. But we know of no law that authorized the sheriff to contract with the proprietor of a particular newspaper that he would publish in it the legal advertisements of the county, beginning at some time in the future, and claim that the legislature could make no regulation which ,would affect such a contract. The publication of advertisements of this character is a part of the official duty of the officer, not his private business.

4.  It was further contended that the act of 1910 violated article 3, section 7, paragraph 8, of the constitution (Civil Code (1910), § 6437), which declares that no law shall pass which contains matter different from what is expressed in the title thereof. The title of this act was "An act to regulate the manner of selecting official county newspapers, to provide how .same shall be .changed, and for other purposes." The contention was that this was not sufficiently broad to cover the provision prohibiting the selecting of a newspaper as the official organ of the county, unless it had been continuously published for two years. The title was broad enough to cover such provision. *Nolan* v. *Central Georgia Power Co.*, 134 *Ga.* 201, 205 (67 S. E. 656), and citations.

*Judgment affirmed. All the Justices concur.*