IN RE GILLETTE DAILY JOURNAL
(No. 1752; May 3, 1932; 11 Pac. (2d) 265)

The cause was submitted for petitioners upon the brief of *Thomas A. Nicholas,* of Gillette, Wyoming.

The cause was submitted for interveners upon the brief of *E. J. Goppert,* of Cody, Wyoming.

BLUME, Justice.

The petitioners in this case, Harmon C. Rice and Mary Rice, on December 8, 1930, commenced the publication of the Gillette Daily Journal, and on August 3, 1931, filed a petition in the District Court of Campbell County, asking that the Gillette Daily Journal be declared a newspaper in which notices required to be published by the laws of the State of Wyoming may be legally and validly published. Notice was given to the attorney general of this state who filed no answer. Thereupon the Wyoming Press Association, a voluntary association of newspaper editors and publishers in this state, was permitted to intervene, and after some evidence had been taken in the case, certain constitutional questions were reserved to this court. The questions so reserved for our decision are as follows:

Question 1: Are the first section numbered 4 of Chapter 73 of the Session Laws of Wyoming, 1897, codified as Section 1310, Wyoming Compiled Statutes, 1920, and Chapter 85 of the Session Laws of Wyoming, 1931, void on account of the restrictive title of Chapter 73, Session Laws of Wyoming, 1897, under the prohibition contained in Section 24, Article III of the Constitution of Wyoming?

Question 2: Do Chapter 73 of the Session Laws of Wyoming, 1897, and Chapters 85 of the Session Laws of Wyoming, 1931, improperly restrict, burden and classify the business of a newspaper having 500 or more paid subscribers, when same shall exist one year or more, and having the set-up size and composition of the Gillette Daily Journal shown by the evidence under Sections 27 and 31 of Article III of the Constitution of Wyoming or Sections 20, 31, 34 and 35 of Article I of the Constitution of Wyoming?

Question 3: Do Chapter 73 of Session Laws of Wyoming, 1897, and Chapter 85 of the Session Laws of Wyoming, 1931, unduly burden the right of a newspaper publisher to engage in business under Section 1 of the 14th Amendment to the Constitution of the United States?

1. The Revised Statutes of Wyoming of 1887, Sections 1818 and 1819, prescribed the kind of type to be used in, and the prices to be paid for, all county and legal advertisements. Chapter 73 of the Session Laws of 1897, relating to the same subject, was entitled as "an Act fixing and regulating the type to be used and the price to be paid for all county and legal printing and advertising, and repealing Sections 1818 and 1819 of the Revised Statutes of Wyoming." Sections 1 and 2 of the act provided for the kind of type that was to be used in legal and county printing and the prices that were to be paid therefor, the provisions being similar to those contained in the revised statutes of 1887. The following section (Section 3, erroneously numbered 4) of the act, provided as follows:

"The publication of any legal notice, or of any printing or advertising required to be published under the laws of this state, shall be of no force or effect unless published in a newspaper which has been regularly issued at least once

each week for a period of fifty-two consecutive weeks prior to the date of the first publication of such notice or advertisement. *Provided,* however, that the provisions of this section shall not apply to newspapers established prior to the passage of this act and shall not apply in counties where no newspaper has been regularly issued for fifty-two consecutive weeks."

This section, as so enacted in 1897, was embodied in the revisions and compilations of 1899, (Sec. 1082) 1910, (Sec. 1077) and 1920, in the last named as Section 1310. In 1931 the legislature enacted Chapter 85 of the Session Laws of that year, the title and Section 1 of which act are as follows:

"AN ACT to amend and re-enact Section 1310, Wyoming Compiled Statutes, 1920, relating to and defining legal newspapers.

Section 1. That Section 1310, Wyoming Compiled Statutes, 1920, be amended and re-enacted to read as follows:

Section 1310. The publication of any legal notice, or of any printing or advertising required to be published under the laws of this state, shall be no force or effect unless published in a newspaper which has been regularly issued at least once each week for a period of fifty-two consecutive weeks prior to the date of the first publication of such notice or advertisement, which has a paid circulation of not less than five hundred and which has a page of not less than twelve inches by nineteen inches; Provided, however, that any paper having the status of a legal newspaper at the time of the passage of this act shall not be affected hereby. Provided, however, that the provisions of this section shall not apply in counties where no newspaper has been regularly issued for fifty-two consecutive weeks, nor where there is but one newspaper in the county, nor in any county where no newspaper can meet the requirements of this Act."

It is contended that Section 3 of Chapter 73 of the Session Laws of 1897, since the title of the act made no reference whatever to the provisions of that section, was invalid and in violation of Section 24 of Article III of the Constitution of Wyoming, providing that

"No bill * * * shall be passed containing more than one subject, which shall be clearly expressed in its title," etc.

It is further claimed that Chapter 85, Session Laws of 1931, which attempts to amend that section, is also void, since no void act may be amended. Counsel for intervener seems to concede that Section 3 of Chapter 73, Session Laws of 1897, is invalid on account of the defect in the title of the act, but it is contended that in view of the fact that this section was embodied in the revisions and compilations of 1899, 1910 and 1920, it was thereby validated. The authorities cited, however, are not in point. The principal cases are: Central etc. R. Co. v. State, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518; Kennedy v. Meara, 127 Ga. 68, 56 S. E. 243, 9 Ann. Cas. 396; Christopher v. Mungen, 61 Fla. 513, 55 So. 273; Ex parte Ferguson, 112 Tex. Crim. 152, 15 S. W. (2d) 650; State v. Horner, 35 So. Dak. 612, 153 N. W. 766; Anderson v. Railway Co., 25 Ida. 433, 138 Pac. 127, Ann. Cas. 1916 C 191; Park v. Cotton Mills, 75 So. Car. 560, 56 S. E. 234. In all of these cases it was decided that a defective title in a legislative act was cured after the act was embodied in a revision. But the decisions are based on the theory, that the revision was, after its completion by a committee, adopted by the legislature as constituting the exclusive statutory law of the state. That is not true here. Neither the revision of 1899 nor the compilations of 1910 or 1920 were approved by the legislature subsequent to the time that they were made. The point, however, as we conceive it, is not of importance herein, if the Act of 1931 is valid in so far as the point now under consideration is concerned. And we think it is. The title is broad, and sufficient, if we strike out all reference to Section 1310, W. C. S. 1920. The contention that this last named section could not be amended and re-enacted because it itself was invalid is not, in our judgment, well taken. The provisions therein contained constitute only a part of Chap-

ter 73 of the Session Laws of 1897, and the validity of Sections 1 and 2 of the latter is not questioned. Hence, the rule stated in Laughton Spinning Company v. Comm., 232 Mass. 28, 121 N. E. 518, 522, is in point. It is there said:

"A statute valid and enforceable within a certain limited field, but unconstitutional and unenforceable in a wider field, may by amendment or law removing the unconstitutional features be extended into the wider field."

In Allison v. Corker, 67 N. J. Law 596, 60 L. R. A. 564, 52 Atl. 362, 60 L. R. A. 564, it was held that a statute so framed as to be wholly or in part unconstitutional but having a title expressing a constitutional object, may by amendatory legislation be rendered constitutional without having recourse to an enactment independent throughout its provisions.

In 36 Cyc. 1055, it is said:

"In general, any statute which is not a mere nullity or which has not been entirely abrogated or repealed by implication may properly be amended."

In 25 R. C. L. 906, it is said:

"Where a statute or any part thereof is invalid, as not within the power of the legislature under the constitution, it is not possible to render it valid by amendment, but where the obnoxious features of the statute may be removed or essential ones supplied by a proper amendment, so that it can be held that, had the law been primarily so framed under its title and within its scope as it has been by the amendment thereto, it would have been valid, it may be rendered valid by amendment so far as its future operations may extend."

We therefore answer the first reserved question, to the effect that Chapter 85 of the Session Laws of 1931 is not void, under Section 24, Article III of the Constitution, on account of any defect of title or on account of the restric-

tive title contained in Chapter 73, Session Laws of 1897. The remaining part of the question need not be answered, since it is immaterial herein.

2. Reserved questions 2 and 3 cannot be answered categorically, but must be separated. The only points argued and which only we shall consider, are (1) whether or not the legislature may prescribe that notices with legal force and effect shall be published in a newspaper that has been in existence for more than one year, and (2) the statutory provision as to the "make-up" of a newspaper in which such notices may be published. We shall at present confine ourselves to the consideration of the first point, in the light of the constitutional provisions mentioned in the second and third reserved questions. Section 31 of Article III of the Constitution relates to supplies furnished for the legislature. Section 20 of Article I of the Constitution provides that every person may freely speak, write or publish on all subjects, and we cannot see how these sections of our Constitution have any bearing herein. Section 30 of Article I provides that perpetuities and monopolies are contrary to the genius of a free state and shall not be allowed. We do not think that this section has been violated by the enactment in question, in so far as the point now under consideration is concerned, since the law regulates prices to be paid for legal notices and permits the establishment of any number of papers in which such notices may be published. It is argued, however, that the provision that a newspaper having the right to publish notices with legal effect must have been established for a period of 52 weeks or more is in violation of the 14th amendment of the Constitution of the United States, in depriving the plaintiffs of property without due process of law, and is furthermore in violation of Section 35 of Article I of our own constitution, providing that no law impairing the obligations of any contract shall ever be made. We do not deem these objections to be well taken.

Chapter 85 in question does not attempt to impair any contract or deprive anyone of any property. It simply prescribes under what circumstances a published notice shall have the effect of a legal notice. The contention made herein is evidently based upon the assumption that the plaintiffs have a property right in making such publications. But the assumption is wrong. The legislature has undoubtedly the right, in exercising the sovereign or police power of the state, to make reasonable regulations in regard to legal notices. The publication thereof is not a right, but at most a privilege, which the legislature bestows, and which it can modify or take away without violating the constitutional provisions just mentioned. Legal notices may consist of the publication of the acts of public officers, for example, of the proceedings of a board of county commissioners. The legislature doubtless could dispense with such publications entirely or devolve the duty of causing them to be made upon whatever officials it desires, making a change in the officials at any time as the public good may require. 12 C. J. 1018; Dollar v. Wind, 135 Ga. 760, 70 S. E. 335, 338. Or such notices may relate to private rights—notices, for instance, of probate or attachment proceedings, or other matters of a judicial or semi-judicial nature. There can be no doubt, we think, that the legislature may make such changes from time to time in providing for such notices as it may deem advisable without infringing upon any contractual or property rights of anyone. Indeed, the very fact that constructive notice must be such, in the proper case, as to constitute due process of law shows that the legislature must necessarily have the right to change the method from time to time as may be shown to be necessary or proper for the public good. In Dollar v. Wind, supra, a newspaper publisher claimed the right to publish notices in accordance with his contract which he had theretofore entered into with a sheriff. The legislature, after the contract had been

made, changed the law, took away from the sheriff the exclusive right to let the publications in question, and vested such right in the sheriff jointly with some other officers. The Supreme Court of Georgia, in denying the contention of the newspaper publisher, said as follows:

"It was urged that the act of 1910 (which changed the law) was unconstitutional, on the ground that it violated article 1, § 3, par. 2, of the Constitution (Civ. Code 1910, § 6389) which declares that no retroactive law or law impairing the obligation of contracts shall be passed. The part of the act thus attacked was that which declared that no newspaper which had not been published for two years should be selected as the official organ of any county. We fail to appreciate the force of this argument. Sheriffs are public officers. Their duties can be changed or modified by the Legislature. That body can prescribe reasonable qualifications for a newspaper before it shall be selected as a medium in which shall be published advertisements of sheriff's sales, citations, and other similar advertisements. The rights of the public may be injuriously affected by the selection of an improper medium for giving such notices. Because the sheriff intended, or even agreed, to place official advertisements in future in some newspaper, this could not prevent the Legislature from regulating legal advertisements for the public good. Under Civ. Code 1895, § 5462 (Civ. Code 1910, § 6067), and the amendatory act of 1899, if the officer was unable to procure the advertisements at rates prescribed by law in a newspaper published at the county site, he was authorized to have them published at such rates in another newspaper. But we know of no law that authorized the sheriff to contract with the proprietor of a particular newspaper that he would publish in it the legal advertisements of the county, beginning at some time in the future, and claim that the Legislature could make no regulation which would affect such a contract. The publication of advertisements of this character is a part of the official duty of the officer, not his private business."

In State of Ohio v. Board, 32 Weekly L. Bull. 88, 1 Ohio Dec. 584, it appears that the statute provided that

certain legal notices should be published in two news-
papers of opposite politics at the county seat and it was
claimed that this was in derogation of the right of the
plaintiff in the case. The court, deciding against the con-
tention of the plaintiff, said as follows:

"It is also elaborately argued that section 4367 is in
violation of the 14th amendment of the Constitution of
the United States, in that it deprives the publishers of all
papers published outside of the county seat from com-
peting for public printing, hence, reduces to that extent
their income, and by that means they are deprived of
their property without 'due process of law.' The trouble
with this argument is, it proceeds from a basis wholly
false. No person can be deprived of a right which he
never had. In the first place, the law does not provide for
competitive bids. Those duties are public duties to be
performed by the publisher, and the law provides the
fees to be paid therefor. The publication of such notice
is not a private business enterprise, and in the assumption
that it is lies the fallacy of the defendant's argument.
This is a public duty, and particular publishers are called
upon to perform it, just as a sheriff is called upon to per-
form the public duty of serving summons and other writs;
and the fees are fixed for this public service thus ren-
dered; if it were not a public service, the legislature could
not fix the price to be charged therefor. Sitting as jurors
is a public service, and by the jury law of Ohio, a person
over seventy years old is incompetent to sit as a juror.
As well might a person thus exempted claim the law to be
unconstitutional, in that it deprived him of a right to per-
form that public service, and to that extent takes from
him his means of livelihood. The very necessities of the
government require that particular persons shall be
selected to perform particular public service, and because
such selections are made, nobody can complain, for no
inalienable right is taken away. Suppose, if you please,
the legislature would change the manner of service of
notice upon the taxpayers, and in place of requiring the
publication to be made in newspapers, they would require
that public notice be posted upon the door of every school
house in the county, could the publisher of any newspaper

complain that the law was unconstitutional, or took away from him to that extent his means of livelihood? It has been held in numerous cases that the publisher of a newspaper acts in an official capacity when publishing a tax notice.''

We shall now proceed to consider as to whether or not the statutory provision in question is in violation of Section 34, Article I of the Constitution, providing that all laws of a general nature shall have a uniform operation, or in violation of Section 27 of Article III of the Constitution, which provides that the legislature shall not pass any special laws granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever, or in violation of the 14th amendment to the Constitution of the United States providing that no state shall deny to any persons within its jurisdiction the equal protection of the laws. These provisions have the same aim in view, and it was held in Jones v. Railway Co., 231 Ill. 302, 83 N. E. 215, 216, 121 Am. St. Rep. 313, that by the constitutional provision that no special law shall be passed to give anyone any special privilege or immunity, ''a guarantee is given that all valid enactments of the legislature shall be uniform in their operation upon persons and property, and by it all citizens are assured the equal protection of the laws of the state.'' No direct decision can be found upon the point now under consideration, except the case of Van Harlingen v. Doyle, 134 Cal. 53, 66 Pac. 44, 54 L. R. A. 771. In that case the court held that a statutory provision similar to that now under consideration was invalid, on the ground that it was not uniform in its operation and that there was no reasonable basis for making this classification. The case, while apparently never reversed, seems to have been completely ignored by the statute, as well as by the courts of California. Thus, in In Re Miller, 15 Cal. App. 43, 113 Pac. 690, in construing the same or a similar provision of the

California law, the court held that a newspaper which was published for only seven months was not entitled to be considered a newspaper having the right to publish legal notices within the contemplation of the statute. The holding in In Re LeFavor, 35 Cal. App. 145, 169 Pac. 412, 413, is as follows:

"The object to be accomplished was to define newspapers in which public notices might be made and which would fairly express such notices to the particular community intended to be reached. * * * Neither could such a journal establish its character in that respect without proving continuous printing of the same without interruption for the period of at least a year within the prescribed limits."

The statute was again before the Supreme Court of California in 1926 in the case of In Re Monrovia Evening Post, 199 Cal. 263, 248 Pac. 1017, 1019, and while the point decided in the Van Harlingen case was not considered, it is interesting to note what the Supreme Court said in reference to the power of the legislature to regulate newspapers having the right to publish legal notices. It said in part:

"The respondent in the instant case contends that to require the mechanical printing to be done in the same city where the newspaper is published and circulated is an unreasonable and unconstitutional violation of the police power of the state. Many cases are cited in which it has been held that various unreasonable restrictions of certain occupations were unconstitutional and void. None of these cases involve the exact question here presented, and are, therefore, scarcely worthy of review. On the contrary, there are numerous cases in which it has been held that a great variety of lawful occupations and professions have been subject to reasonable legislative supervision. Nothing will be gained in reviewing these cases, since it appears that the reasonableness of such regulations must be determined largely from the surrounding facts and circum-

stances of each particular case. * * * It is true that the Legislature, in the guise of exercising its police powers, may not impose onerous or unreasonable burdens upon lawful and useful occupations. But it is equally true that the state has the inalienable right to reasonably regulate private business enterprises in the interest of public health, peace, morals, or the general welfare. The question of the reasonableness of police regulations is addressed primarily to the Legislature, and courts will exercise the utmost liberality in upholding the legislative intent. 23 Cal. Jur. 757, § 132; Brown v. City of Los Angeles, 183 Cal. 783, 192 P. 716. To be sure the police power may not be resorted to merely to promote private gain, but the public interest, as distinguished from that of private individuals, is the basis of its power and alone warrants its exercise. Does not the prescribing of the qualifications constituting a newspaper of general circulation, authorizing it to print the official advertising and public notices required by law, come directly within this rule? We think it does. The very purpose of requiring the publication of official notices is to inform the people concerning proceedings of a public nature for their general welfare. It appears reasonable to require such notices to be published in newspapers having a fixed and permanent domicile and a substantial circulation at the city or place where the inhabitants live who are most vitally interested in the transactions respecting which notices are required. At least, it is not unreasonable to expect the citizens of a particular community to rely upon their local newspaper primarily to inform them of the proceedings of their own local officers and the affairs of local public importance. No doubt it is on this theory that the Legislature has seen fit to require such official advertising to be done only in newspapers of general circulation, both printed and published in the place where such notices are given or made.''

In 46 C. J. 27, it is said:

''It is the policy of the law that notices or advertisements required to be published by law should be published in newspapers which have been in existence long enough to be of a permanent and substantial character.''

This statement, we think, clearly shows the reasonableness of the legislative requirement in question. It is, it seems, commonly made in other states, and rightly so. Constructive notice is, in most instances, poor notice at best, and the legislature must, in the nature of things, have the power to provide that legal notices shall be published in papers established sufficiently long so as to give reasonable assurance of reaching the people for whom they are intended. The law in this respect is a general law, and we think of uniform operation within the meaning of the constitution. The classification is not, we think, unreasonable. The legislature must necessarily have the right to draw the line somewhere, and the period of time prescribed cannot, we think, be said to be unreasonable. We accordingly answer that the provision of the law here considered is not in violation of any of the constitutional provisions above mentioned.

3. There remains the question whether Chapter 85, Session Laws of 1931, improperly restricts, burdens and classifies the business of newspapers "having the set-up, size and composition of the Gillette Daily Journal shown by the evidence" in violation of the constitutional provisions already mentioned. We think we must agree with counsel for intervener that the question so submitted cannot be answered herein. The record does not show that it is necessary at this time to decide it. In Budge v. Commissioners, 29. Wyo. 35, 208 Pac. 874, we held that if the decision of a constitutional question is dependent on whether a statute has been repealed or not, the trial court must first decide the question of repeal before this court will decide a constitutional point. In State v. Kelly, 17 Wyo. 335, 343, 98 Pac. 886, 889, the court said:

"The decision of the constitutional question must be necessary to a decision of the pending case. It cannot be said that this court should decide the constitutionality of

the statute because it might become necessary to a decision of the pending case when after such decision the lower court upon consideration might be of the opinion that the demurrer should be sustained upon other grounds which defendants in their brief insist upon the right to present for the ruling of that court. The question here presented in that event would be practically a moot question. We are of the opinion that a constitutional question should be shown by the record to have been fairly presented to the court below and that its decision is necessary upon the pending case and that unless these facts appear by the record that this court ought not and is not required to express its judgment thereon. It does not from the original papers here returned appear that a question upon the constitutionality of the statute has arisen, the decision of which has become necessary to the determination of the case, nor is this court in a position to say that such question will arise.''

In the case at bar, it does not appear that the trial court has decided whether the Gillette Daily Journal has a circulation of five hundred or more. The allegation in that respect is denied. It is not questioned by the parties herein that this statutory requirement is a valid exercise of the legislative power, and unless, accordingly, the court finds that the newspaper in question has the required circulation, other points will become wholly unnecessary to be decided. Again, the trial court has not decided whether the ''set-up, size and composition'' of the Gillette Daily Journal conforms to or is inconsistent with the statutory provision on the subject, although the petition filed in this case specifically asks a determination of this point. It, the petition, alleges, among other things, that petitioners use, in connection with the newspaper in question, sheets of paper fifteen inches wide by twenty-two inches long; that they wish to make their paper conform to all valid legal enactments; that the word ''page'' has not been defined in the statute; that other provisions of the legislative act in question are indefinite and uncertain

and they ask that the meaning and effect of the statute be determined by the court. In view of this, and perhaps in view of other facts which might be mentioned, for instance, that the statute has no specific provision as to the arrangement of columns, and the length thereof, etc., the question of the meaning and effect, including enforceability, of the statute on this point, is fairly presented by the record. These points are points of fact and of statutory construction in the light of the facts, and must, according to our former decisions, be decided by the trial court before we can be called upon to determine any constitutional questions relating thereto.

KIMBALL, Ch. J., and RINER, J., concur.