FEDERAL LAND BANK OF COLUMBIA *et al. v.* FORRESTER, revenue commissioner, *et al.*

No. 13571. June 18, 1941.

*Harry D. Reed, Arthur W. Holler Jr.,* and *G. Stokes Walton,* for plaintiffs.

*B. B. Zellars* and *Claude Shaw, assistant attorneys-general,* for defendants.

Reid, Chief Justice. The Federal Land Bank and other corporations composing the Farm Credit Administration of Columbia brought the present suit against T. Grady Head, State revenue commissioner, and V. M. Womack, director of the motor-fuel tax unit of the Department of Revenue, seeking in substance to enjoin continued enforcement of the following order of the commissioner: "To all distributors of motor fuels and others to whom it may concern: On and after June 1, 1939, all persons, concerns, and corporations claiming exemption or refund from the State gasoline tax, under the theory that such persons or corporations are instrumentalities of the Federal Government, will be required to use the U. S. Government standard exemption form, No. 1094, approved by the comptroller-general of the United States on June 19, 1936. This ruling must be strictly adhered to, and is applicable to the U. S. Government, or any of its instrumentalities claiming exemption from Georgia State gasoline tax. No exemption certificate dated June 1, 1939, and subsequent thereto, will be accepted." The plaintiffs allege that they are exempt from the payment of the gasoline tax levied by the motor-fuel tax act (Ga. L. 1937, p. 167), because they are instrumentalities of the United States Government, but that they can not truthfully execute form 1094 as required by the commissioner's order, for the reason that gasoline purchased and used by them in their operations is not, as this form would require them to certify, "purchased for the exclusive use of the United States Government." As a result of the commissioner's order, dealers have refused to sell them gasoline without adding to the purchase-price the amount of the tax, unless they will

execute and furnish said form. Before the effective date of the above order the plaintiffs, with the sanction and approval of the commissioner, purchased gasoline from dealers without the payment of the tax, by merely executing a certificate identifying the gasoline as "purchased for use on official business" of the plaintiffs. The action was dismissed on demurrer, and the plaintiffs excepted.

■ The motor-fuel tax act "imposed on all distributors of motor fuel" an excise tax "upon the sale or use of motor fuel by them within this State, at the rate of six ($0.06) cents per gallon, . . provided, however, that no tax is hereby imposed upon or with respect to the following transactions: . . (3) The sale of motor fuel . . to the United States of America or any of its instrumentalities." Ga. L. 1937, p. 167. The plaintiffs have long been recognized and known as instrumentalities of the United States Government. See Smith v. Kansas City Title & Trust Co., 255 U. S. 180; Federal Land Bank v. Priddy, 195 U. S. 229. Accordingly, by the express provisions of the act no tax is thereby imposed upon or with respect to a sale of gasoline to them. The act imposes on the distributor liability for the tax levied upon the sale of gasoline. It is apparent from the allegations of the petition, and by reference to the terms of the act of 1937 (§ 92-1407(c), that the tax is at least generally passed on to the consumer and is collected by the distributor. Since, however, no tax is imposed upon or with respect to a sale made to the plaintiffs, the distributor would not be authorized to collect the tax from them. The trial judge appears to have entertained this view, but nevertheless dismissed the action for the reason that in his opinion the plaintiffs could legally use form 1094 "to establish their exemption from the State gasoline tax." The reluctance of the plaintiffs to execute the form is perhaps due to the fact that their business is in some respects private in character. We think, however, to concern ourselves with the question whether gasoline purchased and used by the plaintiffs in their operations is "purchased for the exclusive use of the United States Government," and accordingly whether they might legally use the form, "is to mistake the straw for the grain of things." It is apparent upon the face of things that the order was no bona fide regulation of the plaintiffs' right to purchase gasoline free from the tax. If they were entitled to

the exemption simply because of their character as instrumentalities of the United States Government (and we have seen that they were), and the commissioner recognized this, all that he could have been concerned with was that the gasoline purchased by them be used for their exclusive use in the performance of their duties. Therefore, while he might legitimately have required them to so certify, we can discover no reason or necessity, and none is advanced, for the requirement that they certify that it was "purchased for the exclusive use of the United States Government." The fact is (as appears from the allegations of the petition and exhibits attached thereto) that before the present order a form was used whereby it was simply certified that the "gasoline was purchased for use only on official business of" one of the plaintiffs, as the case may have been. After the order changing the form was issued but before its effective date, the commissioner indicated in correspondence with the plaintiffs that the requirement for the new form was for the purpose of discontinuing the practice of exempting employees of the plaintiffs from payment of the gasoline tax. There is at last little doubt that the order was, as the plaintiffs in effect allege, issued by the commissioner with the idea that the plaintiffs could not and would not execute the form, and for the purpose of preventing them from purchasing gasoline without paying the amount of the tax.

One of the demurrers filed by the defendant was that the plaintiffs had an adequate remedy at law. It is suggested in the argument here that they might have maintained an action for a refund, or that they may have maintained an action for mandamus. It is simply provided in the motor-fuel tax act (Code, § 92-1418) that when any tax has been erroneously or illegally collected from any distributor, the comptroller-general shall certify the amount thereof to the Governor, who shall, if he approves, draw his warrant for such amount, etc. It is clear that the refund here authorized to be made is only upon the approval of the Governor. Furthermore, the act makes the distributor liable to the State for the tax, and not the purchaser or consumer; and it would seem that only a distributor would have any standing in a court of law to maintain an action for a refund of taxes paid by him to the State, and therefore that a purchaser such as the plaintiffs could not maintain such an action, though they may mave paid the tax to the distributor. So

450

also, in view of the fact that the act charges the distributor with responsibility for the tax, it is not clear that the commissioner owes to the plaintiffs as purchasers such a legal duty under the act as they might enforce in a court of law by action for mandamus. These considerations, which might bar the plaintiffs from proceeding at law, of course do not show that they could not claim the protection of a court of equity, as they have done. It is clear that the exemption as to sales made to them was intended solely for their benefit, and that this created such a right in them as should, at least, be protected by a court of equity. Code, § 37-1001. Irrespective, however, of whether if the plaintiffs might have maintained either or both of these actions, it seems clear that under the circumstances presented neither would have afforded to them as immediate, full, and complete protection as a proceeding for injunction.

The second headnote states well-established law. The point made by the defendant in the argument is that "the distributor" should have been made a party.

In view of what has been said, the court erred in sustaining the demurrer and dismissing the action.

*Judgment reversed.   All the Justices concur.*