JONES, commissioner, *et al.* v. METHVIN.

No. 13861.   October 15, 1941.

*Will Ed Smith* and *Hal M. Smith,* for plaintiffs in error.
*W. S. Mann,* contra.

REID, Chief Justice. ■ We must first dispose of the question whether or not the plaintiff had an adequate remedy at law, the point being made by demurrer that mandamus was the proper remedy. It is argued that since mandamus is intended to compel action, and injunction to restrain or prevent it, this ground of the demurrer is good, since, as claimed, the plaintiff seeks only to compel the commissioner to observe in his official capacity the previous designation of the plaintiff's newspaper as the official organ. It is contended that the plaintiff might obtain adequate relief by the writ of mandamus to compel the county officers to place their legal advertisements in the newspaper he designated. It is true that the function of the writ of mandamus is to compel the performance of official duty, and that the function of injunction is to restrain action or interference of some kind; but in the present situation the plaintiff is not seeking a designation or a selection of his newspaper as the official organ. It has already been so named, and at the time the proceeding was instituted it continued so to be. What the plaintiff sought was to prevent the commissioner from interfering with the ordinary functioning of county officers and others in reference to their legal advertising. He contended, as in division 2 of this opinion we hold, that the statute under which the commissioner purported to act was invalid.

It has frequently been held that the publisher of an official organ for a county can maintain a petition for mandamus to compel the county officers to publish in such newspaper the particular legal advertising coming under their jurisdiction. *Coffee* v. *Ragsdale,* 112 *Ga.* 705 (37 S. E. 968) ; *Braddy* v. *Whiteley,* 113 *Ga.* 746 (39 S. E. 317) ; *Dollar* v. *Wind,* 135 *Ga.* 760 (70 S. E. 335). So, if the question presented had to do only with the legal advertisements

coming under the jurisdiction of the commissioner, the position taken by his counsel would seem to be altogether correct; but that is not the situation. It is claimed that so far as the clerk is concerned he has taken no position in the matter; that the sheriff by reason of the fact that he is dependent in many instances, for his costs and fees on tax sales, upon the action of the county commissioner who, it is claimed, would not pay the same if advertisements of such sales were not carried in the newspaper designated by the commissioner, this would force the sheriff in such confusion to withhold such advertisements from plaintiff's newspaper and place them for publication in the other one. It is also to be borne in mind that there are many other advertisements placed, not directly by the particular county officers, but by individuals and corporations, public and private, whose documents under which they advertise require that they be placed in the official organ of the county involved. Also, in order to be sure of full protection, the plaintiff would be required, if he must resort to the writ of mandamus, to proceed in actions against the several respective county officers who have jurisdiction of the same. So it seems clear to us that the writ of mandamus would not be as effectual to obtain the relief to which plaintiff appears to be entitled as would be the writ of injunction. As stated in *Federal Land Bank* v. *Forrester*, 192 *Ga.* 446, 450 (15 S. E. 2d, 517) : "Irrespective, however, of whether if the plaintiffs might have maintained either or both of these actions [referring in one instance to mandamus], it seems clear that under the circumstances presented neither would have afforded to them as immediate, full, and complete protection as a proceeding for injunction." The petition was not subject to this objection.

■ The act upon which Jones as sole county commissioner relies for authority to make a change in the official organ for publishing legal advertisements in the county is one enacted by the General Assembly in 1941 (Ga. L. 1941, p. 351), the title to which is as follows: "An act to amend section 39-1103 of the Civil Code of Georgia, 1933, providing how and by whom the official organ shall be selected, by providing the manner and date of selecting the official organ, when there are two or more newspapers published and qualified to be the official organ, in all counties in the State of Georgia having a population of more than 21,020 and less than 21,024, according to the official census of the United States for the year

1940, and for other purposes." Section 2 of this act is as follows: "Provided, that in all counties of the State of Georgia having a population of more than 21,020 and less than 21,024 according to the official census of the United States for the year 1940, that from and after the passage of this act it shall be the duty of the county commissioner or the board of county commissioners to select and designate a journal or newspaper qualified under this section to be the official organ of any county, as the official organ of said counties for the publication of sheriff's sales, ordinary's citations, or any other advertising commonly known and termed as 'official or legal advertising,' such as is required by law to be published in the official newspaper of the county; provided said newspaper is published at the county site." The challenge to its validity rests upon the claim that it is violative of the State constitution, art. 1, sec. 4, par. 2 (Code § 2-401), which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." It is conceded in the record and the briefs that the exemption from the general method for changing the official organ, as provided in the Code of 1933, § 39-1103, and the additional provision purporting to give authority to the county commissioner, can apply only to Dodge County. Attention is called in the editorial notes of the Annotated Code of 1933, that several efforts have been made by acts of the legislature to make this general provision of law inapplicable to counties of certain limited and defined population. These amendments are not contained in the Code as annotated, as explained in the editorial note, and the comment is made that they appeared to the annotators to be invalid as special laws where there already existed a law of a general nature on the same subject-matter. Without, of course, determining that question, it seems clear in the present instance that the act under review is invalid and unconstitutional for the reasons assigned in the petition, as set forth above. In *Wilkinson County* v. *Twiggs County,* 150 *Ga.* 583 (104 S. E. 418), referring to an act which would have application to counties having population between 8700 and 8720 in the one instance, and 11,430 and 11,450 in the other instance, Beck, P. J., stated: "It is too plainly a case of the passage of a special law in a case for which provision is made in a general law to require discussion. For the

22

general law on the subject, see Civil Code, §§ 472 et seq. See the decision in the case of *Worth County* v. *Crisp County*, 139 *Ga.* 117 (76 S. E. 747)." *Mayor &c. of Danville* v. *Wilkinson County*, 166 *Ga.* 460 (143 S. E. 769); *Reynolds* v. *Hall*, 154 *Ga.* 623 (114 S. E. 891).

But it is contended by counsel for the commissioner that the provisions of section 39-1103, which were taken from an act of 1910 (Ga. L. 1910, p. 87), refer only to a change in designation of an official organ, giving power to make such change jointly to the clerk, the sheriff, and the ordinary, and that before 1910 there was no general law on the subject of naming or designating initially such official organ. It is said in their briefs "The act of 1910 does not purport to provide for a method of selection—it merely provides for the qualification of official organs and a method of change. . . It is clear therefore that the legislature has not yet seen fit to enact into the general law any method of providing for the selection of official organs in this State." Taking such premise, counsel then reason that the legislature was free to provide as an original proposition a special method for Dodge County; and that although this act purported to amend the Code section referred to above, that fact may be disregarded. In *Coffee* v. *Ragsdale*, supra, decided before the act of 1910, the court discussed and reviewed the various provisions of the Code as it then stood, and held: "When the sheriff of a county selects a newspaper in which to publish his legal advertisements, that newspaper becomes, under the Code, the official medium for all county advertisements, and the Code makes it the duty of the ordinary and the person or persons who have charge of county matters to publish their advertisements therein." We can not agree that it was this decision which gave the authority to the sheriff to select the county official organ. Examination of the decision, which reviewed these Code sections, clearly shows that the decision merely brought together and reconciled the various provisions of law on the subject, and ruled that, taking them all into consideration in their proper relation to each other, the sheriff was by statute so authorized. Thus before 1910 there were provisions of general law governing the manner and granting the power of selecting such official organ. The act of 1910 (Code, § 39-1103), in addition to those provisions respecting the qualifications of such newspapers, merely provided in effect that changes in an official organ (already

selected under provisions of law) could be made only by the concurrent action of the three officers therein named. So whatever it may be called, whether changing the designation or making a new one, the effect would be the same; for thereafter no newspaper not already so designated could be named. This contention also must fail, and it must be held accordingly that the act under consideration would have the effect only of providing for a special method of selection for the county official organ in one county, whereas there already existed a general law governing this question.

The plaintiff shows such a special interest in the legal advertising as to authorize him to maintain the action. See *Coffee* v. *Ragsdale,* supra.

■ There is no real dispute about the facts as shown by the evidence. The allegations of the petition were formally established by proof. So, under the rulings in divisions 1. and 2 above, the judge did not err in granting the injunction.

*Judgment affirmed. All the Justices concur.*